# United States Court of Appeals
## For the First Circuit

No. 19-1522

UNITED STATES OF AMERICA,

Appellee,

V.

JUAN PENA a/k/a JJ,

Defendant, Appellant.

NO. 20-1083

UNITED STATES OF AMERICA,

Appellee,

V.

ROSNIL ORITZ a/k/a RICO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Hon. William G. Young, <u>District Judge</u>

Before

Lynch and Kayatta, <u>Circuit Judges</u>,
and Laplante,* <u>District Judge</u>.

---

* Of the District of New Hampshire, sitting by designation.

James L. Sultan, with whom Kerry A. Ferguson and Rankin & Sultan, were on brief, for appellant Juan Pena.

Chauncey B. Wood, with whom Danya Fullerton and Wood & Nathanson, LLP were on brief, for appellant Rosnil Ortiz.

Donald C. Lockhart, Assistant United States Attorney, for appellee the United States, with whom Nathanial R. Mendell, Acting United States Attorney, was on brief in No. 20-1083; Alexia R. De Vincentis, Assistant United States Attorney, and Andrew E. Lelling, United States Attorney, were on brief in No. 19-1522.

---

January 21, 2022

---

**Laplante**, **District Judge**.  Juan Pena and Rosnil Ortiz (the "defendants") appeal their convictions for conspiring to distribute 28 grams or more of cocaine base.  During a joint criminal jury trial held in 2018, the prosecution played for the jury two video recordings showing Pena and Ortiz discussing and, the next day, consummating a cocaine-base transaction with a confidential police informant referred to herein as "R.E."  But because R.E. invoked his Fifth Amendment right against self-incrimination, neither the prosecution nor the defendants were able to question R.E. at trial about his role in the investigation.  Moreover, the district court made several evidentiary rulings that, the defendants argue, restricted their ability to cross-examine federal law enforcement officers about R.E.'s out-of-court statements -- evidence which, if proffered for an admissible purpose, could arguably undermine the credibility of the underlying drug enforcement investigation in the eyes of the jury.

In separate appeals,[1] Pena and Ortiz both contend that the district court erred in allowing the jury to consider the above-mentioned video recordings and the "out-of-court" statements captured therein by ruling that they were coconspirator statements

_____

[1] In addition to filing separate appeals, Pena and Ortiz submitted separate briefs.  Because their appeals are from the same trial and share common themes, we address their arguments in one consolidated opinion.

admissible under Federal Rule of Evidence 801(d)(2)(E). Additionally, the defendants claim that the district court infringed on their due process rights by limiting their ability to cross-examine trial witnesses about R.E.'s out-of-court statements to drug enforcement agents, by instructing the jury that it could convict either defendant if that defendant had conspired to sell cocaine base with an uncharged supplier known as "Black," and by telling the jury mid-cross-examination that the use of undercover informants in controlled drug purchases is an appropriate law enforcement technique. As discussed below, neither Pena nor Ortiz have met their appellate burden for any of these issues. Their convictions are therefore affirmed.

I.       **Background**

We draw the following facts from the record on appeal, leaving some argument-specific details for later in the opinion.

A.       **The Prosecution's Case-in-Chief**

In February 2018, Pena and Ortiz were jointly tried on the sole count charged in the indictment -- specifically, that during a time period ending on June 8, 2016, the two "knowingly and intentionally" conspired "with each other, and with other persons known and unknown to the Grand Jury," to distribute 28 or more grams of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B)(iii). As part of the prosecution's case-in-chief,

- 4 -

it called three witnesses: Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agents Elliot Rizzo and John Mercer -- the federal agents who conducted the drug buying operation at issue -- and Homeland Security Investigations ("HSI") Agent Kenneth LaBrie -- who processed the drug evidence obtained from the controlled drug purchase. Notably absent from this list, however, was the ATF's key undercover informant in its investigation, R.E., who was terminated as a confidential informant before trial by the ATF for violating his ATF cooperation agreement. See Part I.B, infra.

In addition to questioning these witnesses, the prosecution introduced video recordings (with audio) of two meetings between the defendants and R.E. These meetings occurred over the course of two days in January 2016.

1.      Video of January 5 Parking Garage Meeting

In the first video -- capturing a January 5 meeting between both defendants and R.E. in a Malden, Massachusetts parking garage -- the following transpired:

Pena and Ortiz arrive together at a prearranged meeting spot in a BMW to conduct a cocaine-base transaction. Upon arriving, Pena exits the BMW, enters R.E.'s undercover vehicle, and informs R.E. that he has less than the previously agreed-to amount of drugs with him because the purported source of the

- 5 -

supply, "Black," "thought" the deal was for "two baskets" (seven grams) instead of the previously agreed-upon "sixty-two."[2]  Pena then represents that earlier that day, "he" (presumably Black) "was like, 'Yo, try to see if he'" (R.E.) "'even want that seven,'" to which Pena purportedly demurred to Black: "'Why would he'" (R.E.) "'want . . . a seven . . . [i]f . . . [h]e's buying a sixty-two'"?

In the ensuing discussion as to when the full deal could take place, Pena opens the passenger-side window of R.E.'s vehicle and shouts to Ortiz, who is in the driver's seat of the BMW, "What time can Black be here for sure?"  Ortiz replies, "He's gonna come right back . . . .  Said that he could come back after traffic. . . .  Black is about his business."  After R.E. explains that he has a curfew, Ortiz says he will call Black.  The parties then agree to complete the deal later that day or, "if . . . [Black] can't do it a little later," then "early" the next morning.

2.      Video of January 6 Hotel Suite Meeting

In the second video -- capturing a meeting the next day (January 6) in a Revere, Massachusetts hotel-room suite -- the following transpired:

---

[2] As later explained by the testifying law enforcement agents, a "basket" and a "sixty-two" are common amounts of cocaine base bought and sold in the drug trade.

R.E. enters the hotel suite, at the time occupied by Pena, Ortiz, and an unidentified third male, to consummate the previously negotiated cocaine deal. Shortly after R.E. arrives, Pena steps into the bathroom with R.E., closes the door, turns on the faucet, and flushes the toilet. Though the sound of flowing water distorts the audio, Pena is seen in the mirror counting money, purportedly in exchange for crack cocaine that is out of the frame of the recording device.[3]

Upon exiting the bathroom, Pena and R.E. rejoin Ortiz and the unidentified man to converse about several topics. During this conversation, Ortiz reveals: "Yo, he" (the unidentified third man in the room) "just said he had a whole bunch of dope, crack, he pushing it." Ortiz also informs R.E. that his (Ortiz's) "runner" was using a rental car obtained under his cousin's name. R.E. then departs from the hotel room and returns to his car.

In the aftermath of this recorded meeting, ATF agents recovered two plastic bags from R.E. The parties stipulated at trial that the two bags contained, in total, 49.13 grams of cocaine base.

---

[3] At trial, the prosecution argued that Pena completed the transaction in the bathroom without Ortiz and the unidentified third man in the hotel room because the unidentified man was a competing drug dealer.

3.       Admission of the Video Evidence

Defense counsel objected to the admission of both videos before they were played at trial. Pena's counsel argued, among other things, that none of the statements made by Pena or Ortiz in the videos were admissible under Federal Rule of Evidence 801(d)(2)(E) because the prosecution had not established a conspiracy "outside the four corners of the video." Ortiz's counsel additionally asserted that, with respect to the January 6 hotel-room video, all statements made after the alleged bathroom exchange were unfairly prejudicial and thus inadmissible under Federal Rule of Evidence 403, characterizing them as racist, misogynistic, or inflammatory in substance. Neither counsel specifically objected, however, to the admissibility of any recorded statements attributable to Black or the unidentified third man in the hotel suite -- out-of-court statements the defendants now claim for the first time to be inadmissible hearsay.[4] As such, the district court ruled that the prosecution

---

[4] "Hearsay" generally refers to statements that (1) are made outside of the courtroom and (2) are offered as evidence to prove the truth of whatever the statement asserts. Fed. R. Evid. 801. Statements that are made outside of court but are offered for some other purpose, such as context (or other purposes explained and defined by the courts), do not constitute hearsay, despite the occasional and often colloquial misuse of the term by some. As discussed in further detail herein, the Federal Rules of Evidence generally prohibit parties from using hearsay as evidence unless it falls into a "exception" provided in a federal statute or some other rule of court or evidence. Id. R. 802.

could play all of the video and audio recording evidence, reserving its determination on whether certain statements made therein by the defendants were admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E) until after the prosecution rested.[5]

## B.        Limitations on Cross-Examination

Though defense counsel attempted to force R.E. to take the stand, R.E. refused to testify, invoking (outside the presence of the jury) his Fifth Amendment right against self-incrimination. R.E. was thus deemed legally unavailable as a witness.[6] Defense counsel accordingly relied on cross-examination of prosecution

---

[5] This is an accepted practice in our Circuit. "As a predicate for admitting evidence" under Rule 801(d)(2)(E), a "trial court must conclude that 'it is more likely than not that the declarant and the defendant were members of a conspiracy when the [out-of-court] statement was made, and that the statement was in furtherance of the conspiracy.'" United States v. Geronimo, 330 F.3d 67, 75 (1st Cir. 2003) (quoting United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977)). In this Circuit, this determination is commonly referred to as a Petrozziello ruling. "Significantly, the trial court is not required to decide the Petrozziello question prior to admitting [purported coconspirator] statements under Rule 801(d)(2)(E), but may 'admit the statements provisionally, subject to its final Petrozziello determination at the close of all the evidence.'" United States v. Newton, 326 F.3d 253, 257 (1st Cir. 2003) (quoting United States v. Isabel, 945 F.2d 1193, 1199 n.10 (1st Cir. 1991)).

[6] Neither defendant sought due-process immunization of R.E. to elicit his testimony about purportedly exculpatory events. See United States v. Berroa, 856 F.3d 141, 159 (1st Cir. 2017) ("Trial courts have the ability to grant immunity to a witness upon a showing that the government's refusal to provide said immunity violated the defendant's due process rights.").

witnesses to elicit testimony about R.E.'s credibility and the defense theory that he had framed the defendants, including that R.E. had been paid more than $60,000 as an ATF informant in various investigations, had been responsible for bringing the defendants to the agents' attention, had not met Pena or Ortiz prior to January 5, and had been terminated as a confidential informant for committing an act of domestic violence, which violated his cooperation agreement with ATF.

In addition to these elicited facts, defense counsel also attempted to question the testifying ATF agents about two statements R.E. made after the alleged January 6 drug transaction. First, Ortiz's counsel attempted to question Agent Mercer about a threat R.E. made after he was terminated that, if called as a witness (in criminal cases generally, not just this case), he would testify that he was not searched prior to controlled drug purchases.[7] The prosecution objected to the question on hearsay grounds. At sidebar, Ortiz's counsel argued that R.E.'s threat should be admitted under the hearsay exception set forth in Federal Rule of Evidence 804(b)(3) (statements against interest) because the threat purportedly exposed R.E., who was deemed legally

_____

[7] Per the prosecution's pre-trial disclosures, the government stated R.E. made this threat after the ATF declined to give R.E. a ride to a hearing because of his terminated status.

unavailable under the Rule, to an allegation of perjury.[8]  The district court disagreed and sustained the prosecution's objection, ruling that the post-termination statement was "all extraneous" and "hearsay."[9]

Thereafter, Ortiz's counsel attempted to question Agent Mercer about a subsequent January 23, 2016 controlled drug purchase not charged in the indictment, at which R.E. had inaccurately reported Ortiz as present, even though GPS data from an electronic bracelet worn by Ortiz pursuant to a Massachusetts-state-probationary sentence placed him elsewhere during that time.  To start this line of questioning, Ortiz's counsel showed Agent Mercer a copy of the ATF report for the uncharged January 23 controlled drug purchase before asking whether R.E. had told Agent Mercer that he (R.E.) had met with Ortiz on January 23.  The prosecution objected on hearsay grounds.  The district court sustained the

---

[8] Pena's counsel remained silent as to whether he joined Ortiz's counsel in this argument.

[9] While the court addresses this issue infra, see Part II.B.1, it is difficult to know whether this threat by R.E. constituted hearsay because the record does not indicate the purpose for which it was offered.  If it was offered to prove that R.E. issued a threat to sabotage the prosecution, his threat was not offered for its truth, but rather to undermine his credibility, and was thus not hearsay. Fed. R. Evid. 802.  If it was offered to prove that the ATF did not search R.E. in connection with controlled purchases, then it was arguably offered for its truth and may have constituted hearsay possibly subject to an exception. See Fed. R. Evid. 803, 804.  This ambiguity ultimately does not impact our ruling.  Either way, there was no reversible error.

objection, stating "he's not here, so that's sustained.  Strike it out.  We're on another day.  Another deal."[10]  When Ortiz's counsel asked Agent Mercer if he thought R.E. was going to meet with Ortiz on January 23, the prosecution voiced a similar objection, which the district court again sustained.

Ortiz's counsel then requested a sidebar discussion, during which he proffered that he would establish that Agent Mercer had initially misidentified Ortiz as a seller in his report for the uncharged January 23 controlled drug purchase, even though R.E. never received drugs from Ortiz on that date.  This prompted the district court to explain that laying a proper foundation might change its ruling:

> Well, assuming you can lay a proper foundation, I suppose you can get this.  . . .  [T]he most I can see here is a mistake.  People make mistakes.  But if you want to show him [Mercer] making a mistake, or to be in a position to argue that he made mistakes on what the case was focused upon, I think you have a right to do that.  But I think you want to have him go step by step.

_____

[10]  Here, again, defense counsel certainly was not offering R.E.'s statement for its truth.  The suggested inference, in fact, was precisely the opposite (either a mistake or an attempted set-up on R.E.'s part).  To the extent the question called for inadmissible evidence, the rule against hearsay does not appear to be grounds for exclusion.  But as discussed infra, see Part II.B, this technical detail does not result in reversible error.  Additionally, the district court adjusted the ruling soon after, potentially admitting the evidence.

The district court then questioned rhetorically whether it would be possible for Ortiz's counsel to lay a proper foundation, but nevertheless ruled that it was not going to foreclose the issue.

After sidebar, Ortiz's counsel asked Agent Mercer whether, "at one point," he (Mercer) had "stated that [Ortiz] did sell drugs . . . on January 23?" The prosecution objected as to hearsay, and the district court sustained the objection, stating "I've told you what you can do with respect to that date." Rather than change his question, Ortiz's counsel elected to "move on."

## C.        Sua Sponte Comments on Controlled Drug Purchases

In the course of cross-examination, Ortiz's counsel also questioned Agent Mercer about his role in directing the controlled drug purchases, including his role in determining the quantities of drugs to purchase. As part of that interaction, counsel asked Agent Mercer whether "[w]eight under the laws . . . matter[s]." Agent Mercer responded, "They do, but if someone's a multiple convicted felon with multiple drug convictions, a small amount of drugs is . . . ." At this point, the district court interrupted and made the following statement:

> Let's not beat around the bush. Weight matters under
> the guidelines that are given to judges in imposing
> sentence, and so people in law enforcement take that
> into account, and the more drugs that are taken off the
> street, that has a public policy purpose.
>
> You're not directly involved in that, but we may ask
> you, if you believe that one or both of these fellows is
> guilty, what is the appropriate weight to be attributed

- 13 -

to them, and that's the reason for this discussion. That's the legal background there.

It is appropriate to enforce the laws through undercover informants and controlled buys. That's appropriate. It's a lawful law enforcement technique.

Neither defendant's counsel objected to these comments.

Minutes later, the district court asked Agent Mercer a juror's written question about how he "determine[d] the amount of contraband, the drugs you instructed the informant to purchase." Agent Mercer explained "we requested a [sixty-two] on that date [because it is a] common amount in the trade, and it would get us to where we needed to be for those defendants." The district court inquired: "Where did you think you needed to be?" Agent Mercer responded, "We needed to be over [fifty] grams." The district court asked, "feeding into what I've already said to the jury about the sentencing structures[,] . . . you had those in mind?" Agent Mercer replied, "Of course."

## D.        Petrozziello Ruling and Subsequent Guilty Verdict

At the close of the prosecution's case, the district court found, pursuant to Petrozziello, 548 F.2d at 23, that the prosecution had established by a preponderance of the evidence that "the statements of the two individuals" (Pena and Ortiz) were "in fact co-conspirator statements." Despite submitting thorough pretrial briefing on the matter, the defendants did not object to the district court's final Petrozziello ruling, as required to preserve their Rule 801(d)(2)(E) arguments for appeal. See Part

II.A.2, infra.  Nor did they seek a ruling on the exclusion of recorded, out-of-court statements attributable to Black or the unidentified man.

On the third day of trial, the defendants rested without calling any witnesses.

The jury found both defendants guilty.  After denying the defendants' post-conviction motions for judgments of acquittal or for a new trial, the district court sentenced Pena and Ortiz to seventy-one (71) months and seventy-eight (78) months of imprisonment, respectively.

## II.     **Analysis**

Pena and Ortiz ask this Court to reverse the verdicts against them and order new trials on essentially three grounds. First, they contend that the district court erred in admitting certain portions of the January 5 and 6 videos and the audio statements therein.  Second, they argue that the district court denied them their constitutional rights to confront witnesses and to present a complete defense by refusing to permit either defendant to cross-examine Agent Mercer about statements made by R.E. after the January 5 and 6 controlled drug purchase.  Third, they claim that the district court deprived them of their right to an impartial tribunal by instructing the jury mid-cross-examination that it was proper for law enforcement agents to use

confidential informants and to take drug weight into account when directing controlled drug purchases. The defendants maintain that these alleged errors individually and cumulatively entitle them to new trials. As discussed below, they do not.

**A.        Admission of Video and Audio Evidence**

We first turn to Pena and Ortiz's respective grievances concerning the video and audio evidence of their controlled drug sale to R.E. Pena, fixating on statements attributable to Ortiz, Black, and the unidentified man in the January 5 and 6 videos, contends that the district court erroneously admitted these individuals' purported hearsay statements into evidence under Federal Rule of Evidence 801(d)(2)(E) (coconspirator "exception" to hearsay). Ortiz, focusing on the prejudicial effect of these statements, by comparison, argues that the district court abused its discretion under Federal Rules of Evidence 403 (unfair prejudice) and 404(b) ("bad acts" evidence) by allowing the prosecution to play the January 6 audio in its entirety. We disagree on all fronts, finding no reversible error in any of the defendants' hearsay or unfair prejudice arguments.

1.        <u>Coconspirator Statements (Pena)</u>

Pena asserts that the district court erred by admitting into evidence purported hearsay statements from three individuals -- "Black," the unidentified man in the hotel suite, and his co-defendant, Ortiz, each of whom were arguably members of a

conspiracy with Pena to sell cocaine base[11] -- under Rule 801(d)(2)(E). Because Pena did not object to the admission of these purported hearsay statements "at the close of evidence" when the district court made its final Rule 801(d)(2)(E) determination under United States v. Petrozziello, we review for plain error. United States v. Leoner-Aguirre, 939 F.3d 310, 320 (1st Cir. 2019); see also Fed. R. Crim. P. 52(b) (plain error rule). "Under that grueling standard, we can reverse only if the appellant demonstrates '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Under Rule 801(d)(2)(E), an out-of-court statement made by a party's coconspirator "during and in furtherance of the conspiracy" does not constitute inadmissible hearsay, even when admitted for its truth. E.g., United States v. Bradshaw, 281 F.3d 278, 283 (1st Cir. 2002). To avoid the hearsay barrier, the statement's proponent must establish by a preponderance of the

---

[11] At trial, the prosecution opted to argue that the third unidentified man was not a member of the conspiracy charged in the superseding indictment, despite its pretrial position that the man's statements were admissible as coconspirator statements under Rule 801(d)(2)(E).

evidence "that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." Id. (quoting United States v. Sepulveda, 15 F.3d 1161, 1180 (1st Cir. 1993)).

"The first half of this two-part requirement demands the introduction of extrinsic evidence." United States v. Piper, 298 F.3d 47, 52 (1st Cir. 2002). While the trial court may consider the contents of an alleged coconspirator's statements as evidence of a conspiracy, to ensure admissibility, the statement's proponent must also present some other evidence "sufficient to delineate the conspiracy and corroborate the declarant's and the defendant's roles in it." Id.; see also United States v. Portela, 167 F.3d 687, 703 (1st Cir. 1999). Of course, the proponent need not meet these conditions if a statement is not offered for its truth. See Fed. R. Evid. 801(c)(2). Here, none of the statements Pena identifies were admitted in plain error.

a.        *Statements by the third man in the hotel suite*

As an initial matter, we need not consider whether the prosecution met its burden under Rule 801(d)(2)(E) as to the unidentified third man in the hotel suite because his statement, as recounted by Ortiz, that he was pushing drugs, was relevant and admissible for a non-hearsay purpose: to explain why Pena completed the January 6 drug transaction in the bathroom without the unidentified man or Ortiz. For an out-of-court statement to

constitute hearsay, and thus be deemed inadmissible under Rule 802, the statement must be offered to prove the truth of the matter it asserts. United States v. Soto, 799 F.3d 68, 89 (1st Cir. 2015); see also Fed. R. Evid. 801(c) (defining hearsay). "Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context -- such as a statement offered for the limited purpose of showing what effect the statement had on the listener -- are," by definition, "not hearsay" and thus not excludable under Rule 802. United States v. Cruz-Díaz, 550 F.3d 169, 176 (1st Cir. 2008) (citing United States v. Castro-Lara, 970 F.2d 976, 981 (1st Cir. 1992)).

Though Pena posits that the jury may have considered the unidentified man's statement beyond the limited purpose for which it was offered, he fails to explain how such consideration constitutes plain error when neither he nor Ortiz requested a limiting instruction under Federal Rule of Evidence 105 or otherwise raised the potential hearsay issue at any time prior to the guilty verdict. Cf. United States v. Lebrón Cepeda, 324 F.3d 52, 60 (1st Cir. 2003) (noting that "it would be most unusual for us to find that a district court erred in failing to give a limiting instruction that was never requested" regarding an extra-judicial statement by the appellant's codefendant implicating both defendants). In the absence of cited authority, we are also unpersuaded by Pena's claim that the prosecution was required to

present a witness to explain the effect the unidentified man's statement had on Pena or Ortiz before it could be deemed non-hearsay.

Because the prosecution introduced the unidentified third man's statement not for its truth -- that is, to prove that the man was in fact "pushing . . . a whole bunch of dope" or "crack" -- but rather to explain that Pena wanted to avoid the involvement of a potentially competing drug dealer, the statement did not constitute hearsay as defined by Rule 801(c). The prosecution accordingly was not required to show that the out-of-court statement was admissible under Rule 801(d)(2)(E). See United States v. Bailey, 270 F.3d 83, 87 (1st Cir. 2001). We thus find no plain error.

b.        *Statements by Ortiz*

Turning to Ortiz's statements, we reject Pena's contention that the prosecution failed to present evidence extrinsically corroborating that he and Ortiz were members of a drug selling conspiracy. Stated plainly, Pena's own recorded interactions with Ortiz -- admissible as opposing party statements under Federal Rule of Evidence 801(d)(2)(A), see United States v. Ruiz, 999 F.3d 742, 748-49 (1st Cir. 2021) -- provided sufficient extrinsic evidence to corroborate that Ortiz uttered his challenged statements in furtherance of a conspiracy with Pena to sell cocaine base. According to Pena's own statements, he and

- 20 -

Ortiz met with R.E. on January 5 to transact a sale of "two baskets" of crack cocaine, which he presumably had on his person, in lieu of an originally arranged "sixty-two." These statements corroborate the drug conspiracy actions of Ortiz, who drove Pena to the Malden parking garage meeting, communicated directly with Pena and R.E. -- a man the defense maintains Ortiz never previously met -- about Black (the purported source of supply per Pena's statements) being "about his business," and declared that he would call Black to set up a second time and place to meet. Ortiz was also present in the hotel room on January 6 and saw Pena and R.E. go to the bathroom together to consummate the drug transaction negotiated the previous day. Though this extrinsic evidence is certainly not overwhelming, it is easily sufficient to withstand plain error review.

c.      *Statements by Black*

The admission of Black's purported "double-hearsay" statements[12] presents a more difficult evidentiary question, but ultimately does little to undermine the defendants' convictions. In an argument presented for the first time on appeal, Pena contends that the prosecution presented no extrinsic evidence

---

[12] These statements include: "[Black] thought it was two baskets"; "[Black] was like, 'Yo, try to see if he even want that seven'"; "[Black] [s]aid he could come back after traffic"; and "[Black] wants to do like six, seven [p.m.]."

whatsoever about Black at trial, preventing admission of Black's out-of-court statements under Rule 801(d)(2)(E). The United States disagrees, arguing that under this Court's decision in United States v. Merritt, 945 F.3d 578, 586 (1st Cir. 2019), cert. denied, 140 S. Ct. 2783 (2020), Pena and Ortiz's own conduct extrinsically corroborated the existence of a drug selling conspiracy that included the defendants and Black as coconspirators. We review the admission of statements attributable to Black for plain error.

While this case's facts present a closer question than those in Merritt, we need not decide whether Pena and Ortiz's conduct provided sufficient corroborating evidence of a conspiracy for purposes of Rule 801(d)(2)(E). This is because Pena has failed to show that, under the plain error standard, any of Black's statements, as recounted by the defendants on the video, clearly constituted hearsay that was admitted in plain error. See F. R. Evid. 802 (rule against hearsay).

Simply put, only one of Black's statements -- specifically, that he thought the negotiated deal "was two baskets" -- was arguably offered to prove the truth of the matter asserted.[13]

---

[13] The record does not indicate how Pena knew what Black thought – for example, whether Black told him his thoughts or whether Pena inferred Black's thoughts from his actions – adding a further complication to Pena's appellate hearsay argument.

We address that statement infra. Other statements concerning Black, however, were evidentiarily benign. Pena's statement to Ortiz -- "What time can Black be here for sure?" -- for example, was not an assertion at all, but a question. Likewise, Ortiz's responses that "Black [wa]s about his business" and "want[ed] to do like six, seven [p.m.]" were not offered to show that Black was in fact about his business (whatever that may be) or in fact met with the defendants at that later time; instead, these statements -- true or not -- explained why Pena and Ortiz needed to postpone the drug transaction until the next day -- to provide the previously agreed-upon "sixty two." See Cruz-Díaz, 550 F.3d at 176 (explaining that an out-of-court statement made by a co-defendant to authorities was not offered for its truth when it was offered "to explain why the FBI and police did not pursue other investigatory options after apprehending the defendants"). The same can be said about Black thinking the deal was for "two baskets." Because the statement shows the reason Pena gave -- true or false -- for having only seven grams of cocaine base on his person for the cancelled January 5 parking garage transaction, rather than the agreed-upon sixty-two, it was not clearly inadmissible.

Notably, neither Pena nor Ortiz specifically objected to the admission of Black's statements under Rule 801 or any other evidentiary principle at any point at trial, depriving this Court

- 23 -

of a clear record for appellate review. Nor did they request an instruction under Rule 105 limiting the jury's consideration of these statements solely to contextual matters like those described above, rather than the additional question of whether Black, a possible member of the defendants' drug distribution conspiracy, indeed thought the drug deal between the defendants and R.E. was for two baskets (seven grams) of cocaine base.

But even if we assumed that Pena is correct that the district court clearly erred by failing to exclude Black's out-of-court statement about drug quantities (even though Pena failed to recognize and raise the issue himself at trial), Pena has not shown how this purported error would entitle him to a new trial under the demanding third and fourth prongs of plain error review. This is because, given the evidence admitted at trial, excluding statements about intended drug quantity, Pena has failed to show a reasonable probability that the verdict would have been different for the crime charged: conspiring "<u>with each other</u>" or "with other persons known and unknown . . . to distribute a controlled substance" (emphasis added).[14] As Pena implicitly concedes, the

---

[14] As noted in Part I.A, <u>supra</u>, the indictment charged the defendants with conspiring "with each other, <u>and</u> with persons known and unknown" (emphasis added). Though it may seem counterintuitive, "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive." <u>United States</u> v. <u>García-Torres</u>, 341

- 24 -

bulk of the evidence against him and Ortiz arose from their own recorded words and actions, which were entirely proper for the jury to consider as evidence of a drug-distribution conspiracy. This video evidence showed both defendants actively working together at the same times and places to sell nearly fifty grams of cocaine base in furtherance of a drug-distribution conspiracy. Without Black's statements, the jury could still have easily inferred the existence of a conspiracy to distribute from the quantity of cocaine base recovered from the controlled drug purchase -- a quantity far larger than is customary for personal use -- and the large cash exchange observed between Pena and R.E. See United States v. Rivera-Ruiz, 244 F.3d 263, 269 (1st Cir. 2001); United States v. de Jesus-Rios, 990 F.2d 672, 680 (1st Cir. 1993).

"When a jury returns a general verdict of guilty on a single count charging more than one criminal act," just like the general verdict in this case, our precedent makes clear that the verdict will "stand[] if the evidence sufficiently supports any of the acts charged." United States v. Nieves-Burgos, 62 F.3d 431, 434 (1st Cir. 1995); see also United States v. Sweeney, 887 F.3d

F.3d 61, 66 (1st Cir. 2003) (quoting United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000)). Said more plainly, when an indictment uses the conjunctive "and" in a charge, it operates as a disjunctive "or." Id.

529, 541 (1st Cir. 2018) (same).  Given the evidence described above, the district court's detailed conspiracy instructions to the jury, and the general guilty verdict forms returned against both defendants, we are not persuaded that the defendants' convictions, if allowed to stand, would impair the fairness, integrity, or public reputation of the defendants' criminal proceedings.[15]  See Sweeney, 887 F.3d at 541; United States v. Kelley, 471 F. App'x 840, 845 (11th Cir. 2012) (affirming conviction where the prosecution presented two bases for a conspiracy charge, each covering different objects and coconspirators, and the evidence was sufficient to support at least one base).  Accordingly, we find no reversible error as to the hearsay-related sufficiency arguments raised by Pena and proceed to Ortiz's perceived evidentiary issues.

2.      January 6 Audio Evidence (Ortiz)

In addition to Pena's hearsay-based sufficiency arguments, Ortiz separately contends that the district court erroneously admitted into evidence the full audio from the

_____

[15] Indeed, because the jury found both Pena and Ortiz guilty, we think it is highly unlikely that the jury convicted the two of them for participating in separate conspiracies with Black, as necessarily required to support their reversible error argument, rather than a singular conspiracy that included at least Pena and Ortiz.  We nevertheless address the validity of a conviction based on a conspiracy that included Black below, finding no error.  See Part II.C.2, infra.

January 6 video recording, in which the defendants, R.E., and the unidentified man used racial and misogynistic epithets while discussing crimes unrelated to this case. In Ortiz's view, this "bad acts" audio evidence was irrelevant to any material issue at trial and was not admissible for any purpose under Federal Rule of Evidence 404(b). Additionally, he asserts that the admission of the audio was highly prejudicial, in violation of Federal Rule of Evidence 403, particularly given the prosecution's closing argument, in which it used the objected-to audio to attack the plausibility of Ortiz's "mere-presence" defense (that is, he was merely present at the drug transaction).

Ortiz's arguments here implicate two separate standards of review. Because he objected to the introduction of this evidence at trial only under Rule 403, and not as "other acts" evidence under Rule 404(b), we review the district court's Rule 403 ruling for abuse of discretion and his newfound argument under Rule 404(b) for plain error. United States v. Pena-Santo, 809 F.3d 686, 694 (1st Cir. 2015) (citing United States v. Casas, 356 F.3d 104, 113 (1st Cir. 2004). We fail to find such error on this issue.

"[W]here a defendant challenges a district court's admission of [other] bad acts evidence [under Rule 404(b)], the first question for a reviewing court is whether the objected-to evidence 'has "special relevance"' to the case, by which we mean

- 27 -

that the objected-to evidence 'is relevant for any purpose apart from showing propensity to commit a crime.'" United States v. Habibi, 783 F.3d 1, 2 (1st Cir. 2015) (quoting United States v. Doe, 741 F.3d 217, 229 (1st Cir. 2013)); see also Fed. R. Evid. 404(b)(1) (generally prohibiting propensity evidence). "In particular, the Federal Rules of Evidence specifically enumerate a number of purposes for which" evidence of a crime, wrong, or other act may be used, including "'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" Habibi, 783 F.3d at 2 (quoting Fed. R. Evid. 404(b)(2)); see also United States v. Landry, 631 F.3d 597, 602 (1st Cir. 2011) (explaining that Rule 404(b)'s list of permissible purposes is illustrative and not exhaustive).

Here, we agree that the post-transaction audio had special relevance by serving at least two purposes permitted by Rule 404(b): rebutting Ortiz's mere-presence defense and demonstrating Ortiz's familiarity with drug transactions. In this objected-to audio, Ortiz admitted to drug dealing, having "a runner," and renting cars under other people's names. He also revealed that the unidentified third man in the hotel room was a drug dealer, credibly explaining, in the prosecution's view, why Pena and R.E. completed the deal in the bathroom (to avoid the prying eyes and ears of a potential competitor). Because Ortiz did not personally participate in the bathroom deal, it was

arguably important that the prosecution rebut any possible inference that Ortiz was merely present or some unknowing participant in a drug deal between Pena and R.E., rather than a member of a drug selling conspiracy. Ortiz's own words, recorded in the objected-to January 6 audio, arguably did just that. Or, put in the language of Rule 404(b), Ortiz's statements, made immediately after and in the same hotel suite in which a substantial drug transaction was occurring, showed that he likely knew the subject that drew these individuals together in that room, and was not present at the drug transaction because of mere accident or mistake.

Our inquiry does not stop, however, with a finding that the objected-to audio had the requisite "special relevance" under Rule 404(b). Habibi, 783 F.3d at 4. A reviewing court must also evaluate the evidence's admissibility under Rule 403, specifically, whether its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed. R. Evid. 403. In doing so, we are mindful that "district courts are afforded 'especially wide latitude' in balancing the relative probative and prejudicial values of evidence." Habibi, 783 F.3d at 4 (quoting United States v. Li, 206 F.3d 78, 84 (1st Cir. 2000)). As such, "[o]nly rarely -- and in extraordinarily

- 29 -

compelling circumstances -- will [this Court of Appeals], from the vista of a cold appellate record, reverse a district court's [mid-trial] judgment[s] concerning the relative weighing of probative value and unfair effect." Id. (first alteration in original) (quoting Li, 206 F.3d at 84-85); see also United States v. Burdulis, 753 F.3d 255, 263 (1st Cir. 2014) (explaining that reversal under Rule 403 is appropriate only if the reviewing court is "left with a 'definite and firm conviction that the court made a clear error of judgment'" (quoting United States v. Trenkler, 61 F.3d 45, 57 (1st Cir. 1995))).

This is not such a case. Though the objected-to audio certainly had a potential for prejudice, it was also relevant to refuting Ortiz's mere presence defense -- an issue Ortiz's closing put before the jury -- as well as any potential argument that R.E. framed, or had the opportunity to set up, Pena or Ortiz. As such, we are not convinced, on this record and under this standard of review, that the district court erred in its weighing of probative value and unfair prejudice. See United States v. Currier, 836 F.2d 11, 18 (1st Cir. 1987) ("That the recording disclosed appellant using expletives and sexually explicit language does not make it unfairly prejudicial."); Li, 206 F.3d at 85 ("[T]o be excluded, the evidence must [] not only be prejudicial, but unfairly prejudicial, and must not only outweigh probative value, but substantially outweigh probative value." (emphases in

- 30 -

original) (citing <u>United States</u> v. <u>Rivera</u>, 83 F.3d 542, 545 (1st Cir. 1996))).  We accordingly find no reversible error in the admission of the January 6 video's post-transaction audio.

**B.        Limitations on Cross-Examination**

Next, we turn to Pena and Ortiz's arguments concerning their ability to present a full defense.  The defendants contend that the district court's limitations on the cross-examination of Agent Mercer -- which, in their view, effectively foreclosed evidence of R.E.'s incorrect or deceptive implication of Ortiz in the uncharged January 23, 2016 controlled drug purchase, and R.E.'s post-termination threat to testify that he was not searched prior to controlled drug purchases -- unreasonably deprived them of an adequate opportunity to impeach Agent Mercer or R.E.'s credibility.[16]  Both assert that, under the Sixth Amendment's Confrontation Clause, the Fourteenth Amendment's Due Process

---

[16] The defendants also assert that they were unfairly limited in their ability to cross-examine witnesses about a claim by R.E. in a separate case that he had a drug-hiding spot (commonly referred to as a "hide") in his car.  Neither defendant, however, attempted to question any witness about R.E.'s supposed hide.  As such, this claim of error is forfeited.  <u>See</u> <u>United States</u> v. <u>Raymond</u>, 697 F.3d 32, 37 (1st Cir. 2012).  And, as discussed below, even if the defendants had preserved this issue, they have not shown how R.E.'s out-of-court statements would have been admissible under any of the Federal Rules of Evidence or other evidentiary doctrines.  Nor have they explained how the exclusion of such evidence was prejudicial in light of their ability to cross-examine each testifying DEA agent about the searches of R.E.'s undercover vehicle before and after each controlled drug purchase.  We thus find no error, plain or otherwise.

Clause, and, by extension, Federal Rules of Evidence 806 and 608(b), they had the right to cross-examine witnesses about specific events that were probative of R.E.'s character for untruthfulness in order to attack Agent Mercer and R.E.'s credibility.

At trial, the district court was not presented with, and therefore did not rule on, these specific constitutional and evidentiary issues. Instead, the United States contemporaneously objected to questions as to R.E.'s January 23 controlled drug purchase and R.E.'s post-termination threat on insufficient foundation (Federal Rule of Evidence 602) and prejudice (Rule 403) grounds. The district court sustained the objections and thus prevented defense counsel's specific line of questioning solely on these grounds (as opposed to constitutional or other evidentiary grounds), absent some further proffer of relevance and foundation. It further ruled that R.E.'s threat, as defense counsel intended to use it, was "extraneous" and "hearsay." As such, we review the district court's evidentiary rulings on these extrajudicial statements' inadmissibility for abuse of discretion.[17] See United

_____

[17] Pena did not attempt to cross-examine Agent Mercer on the topics he claims were improperly curtailed and did not join in Ortiz's objection when, during Ortiz's cross-examination, the limitations were imposed. Because Pena cannot now "piggyback" on Ortiz's objections, we review his challenge (as opposed to Ortiz's challenge) to the district court's rulings as to the curtailed topics for plain error. See United States v. Padilla-Galarza, 990 F.3d 60, 82 n.8 (1st Cir. 2021) ("[A] codefendant's objection,

States v. Casey, 825 F.3d 1, 24 (1st Cir. 2016).  We review the unpreserved constitutional implications of those rulings for plain error.  See United States v. Soto, 720 F.3d 51, 57 (1st Cir. 2013).

1.        Admissibility of R.E.'s Statements under Rules 806 and 608(b) (Pena and Ortiz)

Both the Sixth Amendment's Confrontation Clause and the Fourteenth Amendment's Due Process Clause guarantee criminal defendants the right to confront adverse witnesses through cross-examination, as well as a meaningful opportunity to present a complete defense.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986); United States v. Jiménez-Bencevi, 788 F.3d 7, 20-21 (1st Cir. 2015); United States v. Sanabria, 645 F.3d 505, 513-14 (1st Cir. 2011).  But the mere assertion of these rights does not automatically ensure the admissibility of testimony or other evidence that could effectuate these rights or otherwise support a defense theory.  United States v. Pires, 642 F.3d 1, 13 (1st Cir. 2011); see also Casey, 825 F.3d at 24 (noting that these rights are "not without limits").  Indeed, while "[f]ew rights are more fundamental than that of an accused to present witnesses [and evidence] in his own defense," the accused, in exercising these rights, "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the

without more, does not preserve any other defendant's claim of error.").  This has no effect on our ruling.

- 33 -

ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). Put more plainly, "the right to present a defense does not trump valid rules of evidence." Pires, 642 F.3d at 13; accord Taylor v. Illinois, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

The defendants contend that, under Federal Rule of Evidence 806, they were entitled to attack both Agent Mercer and R.E.'s credibility by asking Agent Mercer about specific instances of R.E.'s conduct that were probative on the issue, just as if R.E. had in fact testified as a witness.[18] In their view, these specific instances -- consisting of R.E.'s false or incorrect claim

_____

[18] With respect to matters of character or credibility, the Federal Rules of Evidence "generally discourage[]" the circumstantial use of character evidence, despite its slight probative value, because of the serious risks of undue prejudice, confusion of issues, and unnecessary delay such use carries. Fed. R. Evid. 404 advisory committee's notes to 2006 amendment. Accordingly, the Rules set forth very limited instances in which character evidence may be used. See Fed. R. Evid. 404(a)(3). One permissible use is attacking a witness's character for truthfulness or untruthfulness, commonly referred to as a witness's credibility, by inquiring into specific instances of a witness's conduct. See Fed. R. Evid. 608. And under Rule 806, a party may similarly attack the credibility of out-of-court statements attributable to a non-witness, just as if that non-witness had testified under Rule 608, so long as certain pre-conditions are met. We address whether those pre-conditions were satisfied in this case in the following paragraphs.

that Ortiz was present at the uncharged January 23 controlled drug purchase and R.E.'s post-termination threat to testify that he was not searched prior to controlled purchases -- purportedly demonstrated that the ATF's investigation of the defendants was unreliable. They also maintain that these extrajudicial statements corroborated the defense theory of an alleged set-up by R.E. At trial, neither defendant argued that Rule 806 provided a basis for admitting R.E.'s out-of-court statements, arguing instead that R.E.'s statements were against his interest and thus admissible under Rule 804. But even if they had, we would not find reversible error.

Rule 806 does not provide defendants with an unrestricted right to introduce out-of-court statements under the guise of attacking or defending a non-witness's credibility. To the contrary, its application is limited by its language: A "declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness" only "when a hearsay statement . . . has been admitted into evidence." Fed. R. Evid. 806 (emphases added). As such, Rule 806 only allows an attack on a non-testifying declarant's credibility if the declarant's out-of-court statement is admitted into evidence for its truth. See Fields v. City of Chicago, 981 F.3d 534, 550 (7th Cir. 2020) (affirming the use of an unavailable witness's affidavit to impeach

- 35 -

the declarant's hearsay statements, as the hearsay statements were used for their truth, despite the defendants' claim that the statements were used only for non-hearsay purposes). Otherwise, the out-of-court statement would not constitute admissible hearsay. Fed. R. Evid. 801(c) (defining hearsay).

Here, no out-of-court statements by R.E. were introduced or admitted for their truth. Instead, the prosecution introduced R.E.'s video-recorded statements for the permissible, non-hearsay purpose of providing context for the actions taken and the oral assertions made by the defendants (both to R.E. and in response to R.E.) in furtherance of the defendants' alleged conspiracy to distribute cocaine base. See, e.g., United States v. Occhiuto, 784 F.3d 862, 868 n.2 (1st Cir. 2015) (holding that recordings of an informant's statements are admissible for the non-hearsay purpose of providing context for conversations between the informant and defendants); United States v. Hicks, 575 F.3d 130, 143 (1st Cir. 2009) (same). At all relevant times, R.E. spoke and acted as a government operative. As such, his recorded statements were not admitted to show, for example, that he actually had conspiratorial intent. And while neither Pena nor Ortiz requested an instruction under Federal Rule of Evidence 105 to explicitly limit the jury's consideration of R.E.'s actions and statements to responsive context alone, rather than for their truth (which, again, we emphasize, was unlikely given the district court's clear

- 36 -

instruction that R.E. was "faking it"), they cannot by their own error or intended omission create a "hearsay" backdoor for attacking R.E.'s credibility through Rule 806. Cf. United States v. Walter, 434 F.3d 30, 35 (1st Cir. 2006) (rejecting argument that the district court erred by not issuing sua sponte a limiting instruction advising the jury that it could use an informant's statements only for context and not for substantive purposes).

The same is true for the cross-examination of Agent Mercer. Though Agent Mercer's credibility was at issue (a point the prosecution concedes), the defendants, as the parties attempting to introduce R.E.'s post-January 6 statements, were still required, as a threshold issue, to point to some recognized method in the Rules of Evidence or some other valid evidentiary doctrine for impeaching Agent Mercer with R.E.'s out-of-court statements. They did not do so.[19] No out-of-court statements by

_____

[19] On appeal, Pena argues for the first time (albeit in the alternative) that R.E.'s January 23 misidentification and his post-termination threat were not hearsay if they were offered for their falsity rather than their truth. This Court has repeatedly held, "consistent with the express command of Federal Rule of Evidence 103(a)(1)(B), that 'objections to evidentiary proffers must be reasonably specific in order to preserve a right to appellate review.'" United States v. Gordon, 875 F.3d 26, 30 (1st Cir. 2017) (quoting United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994)). "Although surrounding circumstances sometimes may dress an otherwise bare objection and make the reason for the objection obvious, see Fed. R. Evid. 103(a)(1)(B), that principle does not apply where, as here, the record suggests a multitude of possible grounds for the objection." Id. We thus assess Pena's unpreserved objection only for plain error. Id. His new-found objection fails to clear this high bar, as he has not explained

Agent Mercer were admitted. Nor did Agent Mercer testify to any fact that was based, in part, on hearsay information from R.E. As such, we do not see how Rule 806 (impeaching hearsay declarant's statements), much less Rule 608(b) (impeaching witness testimony), provided a vehicle for introducing R.E.'s out-of-court statements in the cross-examination of Agent Mercer. Accordingly, the district court did not abuse its discretion (or, with respect to Pena's appeal, commit plain error) in precluding counsel's specific lines of questioning under the rule against hearsay, see Fed. R. Evid. 802.

2.      Excluding R.E.'s Statements under Rule 403 (Pena and Ortiz)

Putting aside the admissibility of R.E.'s statements under impeachment rules like Rules 806 and 608, the defendants also fail to persuade us that the district court erred by excluding R.E.'s out-of-court statements on separate grounds, specifically under Rule 403. As discussed above, the right to confront and to cross-examine -- while "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal" -- "may, in appropriate cases, bow to accommodate other

---

how R.E.'s supposedly false statements, if admitted for their falsity, impugned Agent Mercer's credibility or otherwise proved (or disproved) any material issue in a drug-conspiracy case built primarily on undisputed video evidence. Accordingly, he has not shown a reasonable probability that, but for the admission of the R.E. statements, the trial outcome would have been different.

legitimate interests in the criminal trial process." Chambers, 410 U.S. at 295 (quoting Pointer v. Texas, 380 U.S. 400, 405 (1965)). Under Rule 403, for example, a district court may exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. We generally "accord the trial court 'especially wide latitude' in Rule 403 balancing," Rivera, 83 F.3d at 545 (quoting United States v. Rivera-Gomez, 67 F.3d 993, 997 (1st Cir. 1995)), as well as in imposing "'reasonable limits' on cross-examination," Casey, 825 F.3d at 24 (quoting Raymond, 697 F.3d at 39-40).

Though Pena and Ortiz frame their evidentiary grievances as a constitutional issue, neither defendant develops any argument that meaningfully distinguishes their grievances from the more conventional assertion that the district court failed to properly weigh the probative value of R.E.'s extrajudicial statements -- statements that the district court ruled to be "extraneous," implicitly invoking Federal Rule of Evidence 403. Instead, they repeat their position that the ATF's willingness to work with R.E. -- despite him being "the kind of person who threatened to commit perjury . . . after he had been terminated as a paid informant for lying and other misconduct" -- spoke to the overall integrity, or lack thereof, of the ATF's investigation. See Pena's Reply at 15.

- 39 -

They further maintain that R.E. was a critical witness against them, even though he did not actually testify at trial. As such, they contend that it was error to preclude cross-examination about R.E. See id. at 16-17. Again, we disagree.

As an initial matter, we do not question that R.E.'s extrajudicial statements bore some relevance to the prosecution's case or the defense's theories.[20] Nevertheless, the probative value of his out-of-court statements was severely undermined by the nature of the prosecution's case. Despite the defendants' argument to the contrary, the prosecution's case did not turn on the credibility of R.E., who never testified in the trial. Instead, the prosecution's case revolved around undisputed, authentic video and audio recordings that the jurors viewed for themselves.[21] The admission of R.E.'s January 23 misidentification

---

[20] For example, R.E.'s (presumably false) statement that he was not searched prior to controlled buys was arguably probative of whether the nearly 50 grams of cocaine recovered from his person after the January 6 controlled drug purchase was sold to him by the defendants rather than acquired at some point prior to the controlled drug purchase.

[21] To support his position, Ortiz points to Johnson v. Brewer, 521 F.2d 556 (8th Cir. 1975), in which the Eighth Circuit Court of Appeals reversed a drug possession conviction where the district court had excluded evidence of how a testifying informant, who was the sole witness to the crime, had previously framed an individual in another criminal case. Id. at 562. Unlike in Brewer, R.E. did not testify at trial and was not the only witness to the drug deal that furthered the alleged drug distribution conspiracy charged. Instead, video and audio evidence captured both the defendants' conversations – conspiratorial actions in and

(intentional or not) would have done little to help the defendants, as they were clearly shown and heard in both video recordings -- conversations, which, we stress, were conspiratorial acts in and of themselves -- negotiating, and then consummating, a cocaine base sale.  Indeed, the defendants never dispute this fact or argue that R.E.'s excluded out-of-court statements would help dispute it.   Further, the defendants were able to elicit on cross examination several facts about R.E. and his relationship with the investigating agents -- including that R.E. had been paid a substantial sum to serve as an informant and had been terminated for committing a domestic violence crime -- all of which likely undercut R.E.'s credibility as a reliable source in the eyes of the jury.

On the other side of the balancing, the potential for confusion arising from mini-trials on (1) whether R.E. intentionally or accidentally misidentified Ortiz as participating in an uncharged drug transaction on January 23, and (2) whether R.E. maliciously or sincerely claimed that he was not searched prior to controlled drug purchases, was apparent.  See, e.g., United States v. DeCologero, 530 F.3d 36, 60 (1st Cir. 2008) ("[T]he trial judge . . . has discretion under Rule 403 to exclude

---

of themselves – as well as the drug deal that resulted.  Brewer is thus inapposite.

[extrinsic evidence showing bias] if it would distract from the main issues of the case." (citing United States v. Gomes, 177 F.3d 76, 81 (1st Cir. 1999))). The district court repeatedly aired this concern at trial, noting that the evidence presented needed to pertain to "this case, not other cases." We broadly defer to these in-the-trenches determinations and have heard no compelling reasons for overturning them.

In sum, even if Rule 806, Rule 608(b), or some other evidentiary doctrine provided a proper basis for introducing R.E.'s out-of-court statements -- hearsay or otherwise -- it was still within the broad discretion afforded to the district court under this Circuit's precedent and, more generally, Rule 403, to conclude that R.E.'s statements were "extraneous." We do not reach a different conclusion simply because the defendants have recast their evidentiary disagreements in constitutional terms. Accordingly, we find that the exclusion of R.E.'s statements, as the defendants intended to use them, did not abridge the defendants' constitutional rights to confront witnesses and to present a complete defense. We find no reversible error.

## C.        Instructions to the Jury

Pena and Ortiz further contend that the district court deprived them of their right to a trial by an impartial tribunal by telling the jury, sua sponte and mid-cross-examination, that "[i]t is appropriate to enforce the laws through undercover

informants and controlled buys" and to take drug weight into account when doing so. Additionally, Ortiz asserts that the district court erred by instructing the jury that it could find Pena or Ortiz individually guilty of conspiring to distribute with Black, even if they did not conspire with each other, and by failing to provide other conspiracy-related instructions. As discussed below, we find no reversible error.

1.      Judicial Comments Regarding Undercover Informants and Controlled Drug Purchases (Pena and Ortiz)

We begin by addressing the district court's sua sponte comments regarding the propriety of controlled drug purchases. The defendants each contend that these comments crossed the line by strengthening the prosecution's case and creating an appearance of bias in the prosecution's favor. In Pena's view, the district court's comments "effectively insulated" R.E. and the prosecution's reliance on him from any "meaningful scrutiny" and "did so in the face of the defense['s] efforts to put before the jury evidence of R.E.'s bad acts and dishonesty." Ortiz similarly asserts that the comments "unfairly bolstered the credibility of [Agent] Mercer, R.E., and the government's tactics," which were focal points of the defense's strategy. Viewing the district judge's comments in the context of the trial as a whole, we are not persuaded.

"It is well settled that the district court is more than a 'mere moderator' in a federal jury trial," United States v. Rivera-Rodríguez, 761 F.3d 105, 110-11 (1st Cir. 2014) (quoting Quercia v. United States, 289 U.S. 466, 469 (1933)), and has the authority to, among other things, question witnesses and comment on the evidence. See United States v. Ayala-Vazquez, 751 F.3d 1, 24 (1st Cir. 2014) (citing Logue v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997)). In doing so, judges must safeguard defendants' due process rights to a "fair trial in a fair tribunal." Id. at 23-24 (quoting United States v. de la Cruz-Paulino, 61 F.3d 986, 997 (1st Cir. 1995)). To that end, judges "must remain constantly vigilant to ensure they do not infringe upon the province of the jury by commenting or appearing to comment (positively or negatively) on a witness's credibility" and "must guard against adding to the evidence or smoothing the pathway to a verdict in favor of either side." Id. at 28.

"Where, as here, a convicted defendant claims that the trial court overstepped its bounds and gave an appearance of judicial bias that requires a new trial, 'we consider whether the comments were improper and, if so, whether the complaining party can show serious prejudice.'" Rivera-Rodriguez, 761 F.3d at 111 (quoting Ayala-Vazquez, 751 F.3d at 24). Serious prejudice requires "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different."

Id. at 112 (alteration in original) (quoting United States v. Hebshie, 549 F.3d 30, 44 (1st Cir. 2008)). In addition, we consider the comment's cumulative effect in the context of the trial as a whole. See id. at 113. This is true whether the claim is preserved or not. Id. at 112 n.7. Where the claim is unpreserved, however -- as the defendants concede is the case here -- the defendant must also demonstrate that the error was clear or obvious. See United States v. Santana-Pérez, 619 F.3d 117, 126 (1st Cir. 2010) (finding no clear or obvious error where "any signals the court may have given about its views [we]re susceptible of multiple interpretations on the cold record").

Neither Pena nor Ortiz point to any authority from this Circuit that demonstrates the district court's purported error was clear or obvious. Though other circuit courts, such as the Eighth Circuit Court of Appeals, have at times expressed a concern that statements like those here "could signal indirect judicial approval of the [prosecution's] management of the investigation," see United States v. Strubberg, 929 F.3d 969, 978 (8th Cir. 2019), at least one circuit court of appeals has held that a similar comment -- that the government's use of deceptive investigative practice was lawful -- is within the trial judge's discretion and is not prejudicial under appropriate circumstances, see United States v. McKnight, 665 F.3d 786, 793-94 (7th Cir. 2011). Given the absence of any controlling authority, and the mix of persuasive

authority, we fail to share the defendants' view that any error in the district court's comments was either clear or obvious. See United States v. Romero, 906 F.3d 196, 209 (1st Cir. 2018) ("[D]ifferent precedents on the question at hand preclude [a defendant] from showing that any error (if error there was) was plain.").

We are also unconvinced that the sua sponte comments seriously prejudiced either the proceedings against the defendants or the jury's verdict, particularly given the court's other cautionary instructions and the strong evidence against the defendants. This Court has "long recognized . . . that 'within wide margins, the potential for prejudice stemming from improper testimony or comments can be satisfactorily dispelled by appropriate curative'" or cautionary instructions. Ayala-Vazquez, 751 F.3d at 26 (quoting United States v. Pagán-Ferrer, 736 F.3d 573, 587 (1st Cir. 2013)). In Ayala-Vazquez, for example, this Court found that two defendants were unable to show they were prejudiced by a trial judge's comments where they failed to timely object to them, the court gave multiple cautionary instructions to the jury after the fact, and the evidence against the defendants was overwhelming. Id. at 27-29.

Here, Pena and Ortiz similarly failed to object to the district court's comments on drug quantity and the propriety of undercover controlled drug purchases. Moreover, they failed to

otherwise raise the issue to the district court at any time prior to appeal, including when the district court asked Agent Mercer juror-provided questions on how ATF agents determined the amount of drugs R.E. should purchase and whether ATF agents had sentencing consequences in mind when determining what quantities to purchase. Perhaps this is because the district court's questions advanced the precise point that defense counsel was seeking to make: specifically, that ATF agents had the potential severity of sentencing in mind in setting up the controlled drug purchase. Regardless, in cross-examining Agent Mercer or in closing, defense counsel were perfectly free to suggest that the ATF's tactics showed that the ATF possessed ill intent towards the defendants or that ATF agents improperly manipulated the evidence to effectuate a more severe sentence. Despite having several opportunities, they chose not to. The district court, on the other hand, repeatedly emphasized to the jury throughout the proceedings that it was up to the jury alone to find the facts. Absent any argument to the contrary, we presume that the jury followed the district court's cautionary instructions, Ayala-Vazquez, 751 F.3d at 26; accord United States v. Sampson, 486 F.3d 13, 47 (1st Cir. 2007), cutting against a finding of prejudice.

Given the defendants' failure to object, the court's cautionary instructions to the jury, and, perhaps most importantly, the strength of the evidence against Pena and Ortiz,

we are not persuaded that Pena or Ortiz suffered serious prejudice as a result of the district court's comments about drug weight and the general use of undercover informants in controlled drug purchases. As such, even if the district court's comments constituted error (a question we need not answer today), those assumedly erroneously comments were harmless on this record.

2.      Sufficient Evidence of a Conspiracy Involving Black (Ortiz)

Turning to Ortiz's individual jury instruction challenges: Ortiz first contends that the district court erred by instructing the jury that it could find him (or Pena) guilty if they found he (or Pena) conspired to distribute with Black because the prosecution (in Ortiz's view) introduced no evidence demonstrating the existence of a conspiracy encompassing Black. Ortiz asserts that, at most, the evidence showed that he and Pena purchased drugs from Black, but proved no agreement to redistribute drugs outside that transaction. We review his challenge to the sufficiency of the evidence de novo, evaluating the evidence and all plausible inferences therefrom in the light most favorable to the verdict to determine whether a rational factfinder could conclude beyond a reasonable doubt that Ortiz (or Pena) committed the charged crime. See United States v. Torres Monje, 989 F.3d 25, 27 (1st Cir. 2021). We disagree with Ortiz's view of the record evidence as well as his argument for error.

From the outset, Ortiz's sufficiency arguments as to a conspiracy with Black are unpersuasive, as our conclusion that there was sufficient evidence of a conspiracy to distribute between Pena and Ortiz (even without Black) undercuts any argument that a new trial is warranted. When a jury returns a general guilty verdict on a sole count,[22] and there is sufficient evidence as to one of two alternative theories of guilt in that count, as was the case here, see Part II.A.1, supra (discussing the more-than-sufficient evidence of a conspiracy between Pena and Ortiz), insufficiency of the evidence as to the other theory of guilt will not undermine the conviction. Sweeney, 887 F.3d at 541 (citing Nieves-Burgos, 62 F.3d at 434)); see also Griffin v. United States, 502 U.S. 46, 59-60 (1991); Kelley, 471 F. App'x at 845 (applying principle in a conspiracy case).

Our ruling, however, need not rest on such a formalistic basis, as the prosecution presented evidence sufficient for the jury to find that Pena or Ortiz also conspired with Black. As discussed above, the January 5 audio recording captured the defendants discussing their purported supplier, who, as narrated by Pena and Ortiz, (1) thought R.E. (who was the defendants'

---

[22] Ortiz and Pena did not request jury instructions or a special verdict form requiring findings as to separate conspiracies or specific identities of co-conspirators. There was thus no opportunity for the jury to express whether or not either defendant conspired with Black.

customer, not Black's) only wanted "two baskets" of cocaine, (2) "f**ked" up the amount of cocaine, (3) instructed Pena to "try to see if [R.E.] even want that seven," and (4) "[s]aid that he could come back after traffic." These statements, admitted into evidence without an objection specific to Black or a limiting instruction, provided key context for why the initial transaction was delayed to January 6. See Part II.B.I, supra. Additionally, because they were admitted without limitation, they could "be used by the jury on any issue in the case." Correa v. Hosp. San Francisco, 69 F.3d 1184, 1191 (1st Cir. 1995); see also Castro-Lara, 970 F.2d at 981 ("[O]nce the testimony was received into evidence generally, without objection or limitation, the jury was entitled to draw all reasonable inferences from it."). Based on these statements, the jury could infer that Ortiz and Pena were in regular contact with Black, and were aware of his general whereabouts, his habits and preferences, and that he was "about his business" (which the jury could readily deduce from the context of the conversation to be the business of drug trafficking). The jury could also surmise that Black was aware he was selling drugs to a third party through Ortiz and Pena, given the quantities of drugs at play and his instructing Pena "to see if [R.E.] even want that seven."

The fact that the defendants now claim on appeal, incorrectly in our view, see Part II.A.1, supra, that some of these

- 50 -

statements constituted inadmissible hearsay does not alter this calculus: "[I]f no objection is raised, [hearsay] is admissible." Gordon, 875 F.3d at 30. Moreover, we find no plain error with the statements' admission. Accordingly, the jury could consider Black's statements not just for context, but for any fact of consequence, including Black's membership in the charged conspiracy. And this evidence against Black was more than sufficient to create a reasonable inference of Black's participation in a drug-distribution conspiracy (or multiple conspiracies) with either or both defendants. We therefore find no reversible error here.

3.      Notice and Ambiguity of the Black-Conspiracy Instruction (Ortiz)

Ortiz also contends (1) that he was unfairly surprised by the "Black-conspiracy" instruction, and (2) that the jury could have interpreted the Black-conspiracy instruction to mean that they could convict Ortiz if they simply found a buyer-seller relationship between Ortiz and Black. We reiterate that any claim of error regarding the district court's conspiracy instructions as to Black lacks merit given the sufficiency of the evidence of a conspiracy between Pena and Ortiz. His notice and ambiguity arguments similarly lack merit.

Despite Ortiz's purported surprise, the indictment charged Ortiz and Pena with conspiracy to distribute cocaine base

"with each other, and with other persons known and unknown" (emphasis added). There can be no serious argument that Black did not fall within the category of persons known and unknown, and "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive." Garcia-Torres, 341 F.3d at 66 (1st Cir. 2003) (quoting Simpson, 228 F.3d at 1300).

Additionally, the district court's conspiracy instructions stated in no ambiguous terms that if the jury found that one of the defendants made a "genuine" and "knowing" agreement to purchase drugs for a drug deal from Black, "that would be enough [to prove a conspiracy with Black] if there was an actual agreement between Black and the [defendant] . . . to supply the drugs which were going to be distributed." These instructions do not suggest that anything less than a conspiracy between Ortiz and Black would be sufficient to convict. No reversible error involving these instructions occurred. See also United States v. Dellosantos, 649 F.3d 109, 115 (1st Cir. 2011) (defining proof of a criminal agreement as the "the sine qua non of a conspiracy" charge (internal citation omitted)).

4.      Denied Request for Multiple-Conspiracy and Buyer-Seller Instructions (Ortiz)

Last, Ortiz argues that the district court erred by not giving both a multiple-conspiracy and a buyer-seller instruction, in addition to its other conspiracy-related instructions. As Ortiz did not request either instruction at trial, we review for plain error. United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009) (citing United States v. Riccio, 529 F.3d 40, 46 (1st Cir. 2008)).

"A multiple-conspiracy instruction is warranted 'if, on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'" United States v. Walker-Couvertier, 860 F.3d 1, 16 (1st Cir. 2017) (quoting United States v. Niemi, 579 F.3d 123, 126 (1st Cir. 2009)). A buyer-seller instruction is warranted, by comparison, "only if the record, taken in the light most congenial to [the defense's] theory of the case, could plausibly support" that "a buyer and seller in a single drug transaction [we]re not invariably part of a drug conspiracy." United States v. Martínez-Medina, 279 F.3d 105, 120 (1st Cir. 2002) (citing United States v. Rodriguez, 858 F.2d 809, 812 (1st Cir. 1988)); see also United States v. Moran, 984 F.2d 1299, 1302 (1st Cir. 1993) ("a single drug sale does not automatically make buyer and seller co-conspirators" (citing United States v. DeLutis, 722 F.2d 902, 906 (1st Cir. 1983))).

As to the multi-conspiracy instruction, Ortiz renews his argument, previously rejected, that the jury should not have been permitted to convict on the basis of a conspiracy between Ortiz and Black because it was not properly charged in the indictment. Given our prior discussion, little more need be said. The indictment charged the defendants with conspiring with each other, and with other persons known and unknown, to distribute cocaine. Under this charge, the jury could have convicted Ortiz if they found that the prosecution had proved beyond a reasonable doubt the existence of a conspiracy between him and Pena, him and Black, or among all three.

As to the latter, Ortiz argues that a buyer-seller instruction was warranted because the evidence as to an Ortiz-Black conspiracy was just as suggestive of a buyer-seller relationship as it was of a conspiracy. To support his argument, he points to United States v. Gee, 226 F.3d 885 (7th Cir. 2000), in which the Seventh Circuit Court of Appeals held that a buyer-seller instruction was warranted because the evidence of a conspiracy, deemed "circumstantial and not overwhelming," was equally "consistent with a buyer-seller relationship." Id. at 895. Those are not the circumstances of this case.

Here, the evidence directly showed that Black was aware of Pena and Ortiz's intent to resell the "sixty-two," going so far as to instructing them to see if R.E. would accept "two baskets"

instead. That request, combined with the sheer quantity of drugs contemplated in the sale, strongly undermined any suggestion that Pena and Ortiz were the final purchasers or that the drug purchase was purely for personal use. See United States v. Mitchell, 596 F.3d 18, 24 (1st Cir. 2010) ("A 'classic' buyer-seller relationship is a single sale, for personal use, without prearrangement." (citing Moran, 984 F.2d at 1304)); United States v. Innamorati, 996 F.2d 456, 484 (1st Cir. 1993) ("[C]ourts that have approved the 'buyer-seller' instruction have restricted its use to cases in which the evidence showed only a single or a very limited number of sales for personal use."). Because the evidence of record did not plausibly support a finding that Black and Ortiz had a mere buyer-seller relationship, see Martínez-Medina, 279 F.3d at 120 (no buyer-seller instruction warranted where "overwhelming evidence showed that [co-defendants] agreed to import drugs with the intent to distribute them"), we find no reversible error with the district court's exclusion of a buyer-seller instruction.

D.        **Cumulative Error**

Finally, the defendants raise the issue of cumulative error. Because "we find that the district court's actions were not errors[,] . . . we need not conduct a cumulative error analysis" and decline to do so. Rivera-Rodríguez, 761 F.3d at 128; see also United States v. Stokes, 124 F.3d 39, 43 (1st Cir.

1997) ("By definition, cumulative-error analysis is inappropriate when a party complains of the cumulative effect of non-errors.").

**III.     <u>Conclusion</u>**

For the foregoing reasons, we AFFIRM Pena and Ortiz's convictions.