J. Ted MISHLER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

David L. SKAGGS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Sept. 16, 1977.

Rehearing Denied Nov. 18, 1977.

Jack Emory Farley, Public Defender, William M. Radigan, J. Vincent Aprile II, Edward C. Monahan, Asst. Public Defenders, Frankfort, for appellants.

Robert F. Stephens, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

David L. Skaggs was indicted, tried and convicted on two counts of robbery in the first degree, KRS 515.020(1)(b). The first count concerned a robbery of the Foodette Market in Bowling Green, committed on January 2, 1976; the second count concerned a robbery of Moore's IGA Market in Bowling Green on January 7, 1976. Skaggs was sentenced to 20 years' imprisonment on each count, the sentences to run concurrently.

J. Ted Mishler and Leland Henderson were indicted for the offense of "being accomplice to first degree robbery," KRS 502.020(1)(a). Mishler was tried with Skaggs, convicted on the charge and sentenced to 20 years' imprisonment. Henderson was not tried with Skaggs and Mishler.

The Commonwealth introduced witnesses who identified Skaggs as the person who used a pistol to rob the Foodette Market on January 2, 1976. In this appeal, the issues presented by Skaggs and Mishler concern the robbery which took place at Moore's IGA Market.

According to the evidence for the Commonwealth, a clerk at Moore's IGA saw Skaggs and another man enter the store. Skaggs picked up a bag of fritos and walked to the cash register. At the cash register, he pointed a pistol at the clerk, ordered her to "bag it up" and robbed her of cash including a $50 bill and some torn $1 bills. Skaggs was wearing a brown windbreaker and a pair of dark glasses. The owner of the store testified $297 was missing, including a $50 bill and about twenty torn $1 bills. Skaggs and the other man left the store and fled in a purple automobile.

The arresting officers testified they received a radio description of the purple automobile with out-of-state license plates used by the robbers. Five to ten minutes later, the two officers saw an automobile matching the description heard over the radio. They stopped the car which was being driven by Mishler. Money was seen in Mishler's shirt pocket. Skaggs was seated on the passenger side of the front seat; Henderson was seated in the back seat. The officers found a loaded .22-caliber pistol under the seat occupied by Skaggs. The officers also found a loaded automatic in the back seat occupied by Henderson. One hundred and fifty dollars was found on Mishler's person, including twenty $1 bills in his shirt pocket. Ninety-five dollars was found on Skaggs including several old and torn $1 bills.

A police officer testified Skaggs stated that on the day of the Moore's IGA robbery he was high on drugs, that Mishler and Henderson sent him in to rob the store, and

that "he wouldn't have done it if it hadn't been for drugs."

A neighbor testified that on the day of the robbery, she observed a purple automobile. It was driven past Moore's IGA and then returned to the store. She saw a man run from the store carrying a paper bag and gave a description of Skaggs' clothing and the dark glasses. The neighbor's daughter identified Mishler as the driver of the automobile, and testified that on the afternoon of the day before the robbery she saw a purple car in the vicinity driven by Mishler with two other occupants.

A statement to the police given by Henderson was introduced. In the statement, Henderson confessed that he, Mishler and Skaggs planned the robbery. At the trial, Henderson recanted the statement explaining that he made the statement implicating Skaggs and Mishler for the reason that his father was on his death bed, that under these circumstances, he would have signed anything and that through a deal with the prosecutor he did sign a voluntary statement relating what the prosecutor wanted to hear. At the trial, Henderson testified that he, Mishler and Skaggs stopped at Moore's IGA to get something to eat, that while in the store, Skaggs without any warning pulled a gun. Henderson testified that he ran from the store and told Mishler "Skaggs done robbed that store"; that Mishler said, " 'What?' "; that he (Henderson) said, "Skaggs just robbed that store— let's get going." He testified that upon entering the automobile, Skaggs put money into Mishler's pocket. Henderson testified he was not aware of Skaggs having a pistol and that he, Mishler and Skaggs had not arrived in Bowling Green until dark on the night before the robbery. He denied any plan to commit the robbery.

Henderson's sister testified that Henderson, Mishler and Skaggs left Rising Sun, Indiana, between one and two in the afternoon on the day before the robbery.

Mishler testified substantially the same as did Henderson as to the time of leaving Indiana, denied any plan to commit the robbery, related Henderson's telling him of the robbery, and testified that "I really didn't know what to do, you know. I couldn't very well put him out of the car. I couldn't drive alone. I just couldn't walk away from my own automobile. I didn't really know that there was any robbery supposed to be taking place." He testified he was unaware of weapons being in his car.

Skaggs testified as to leaving Indiana the afternoon before the robbery and arriving in Bowling Green the night before, the purpose of the trip being to paint signs. He testified that he was taking speed and smoking pot the day of the robbery, his memory of events was cloudy, and he did not remember the robbery. He testified as to driving up to Moore's IGA to get something to eat, going into the store, and taking a bag of fritos from a stand and then going to the cash register. He testified he did not remember what happened. His memory returned when he got into the car and he remembered the arrest. He testified Mishler did not know of the pistol he carried, which he said was for self-protection from an individual as a result of an unrelated incident. Henderson testified Skaggs was "all doped up, under these drugs." Mishler testified Skaggs was taking pills on the day of the robbery of Moore's IGA, but did not know the kind of pills.

Skaggs and Mishler appeal with numerous assertions of error on the part of the trial court.

I.

On Skaggs' appeal, we find reversible error in the trial court's refusal to give an instruction on intoxication. KRS 501.-080 provides that "[i]ntoxication is a defense to a criminal charge" if such condition "[n]egatives the existence of an element of the offense." An essential element of robbery in the first degree is the element of *intent*. The trial court erroneously concluded that an instruction on intoxication was not required for the reason the intoxication was voluntary.

■ If the posture of the evidence is such that an issue of fact is raised showing intoxication to such a degree that the defendant was unable to form the requisite intent where the charge is for a specific intent crime, then the defendant is entitled to an instruction on this defense, this without regard to whether the intoxication was voluntary.

■ Here the evidence of use of drugs was substantial. The testimony of Skaggs, Henderson and Mishler on the use of drugs would not, in light of the evidence, be sufficient to justify an instruction on intoxication save for that testimony of Skaggs that at the very moment of the robbery he lost his memory and did not know what he was doing. No matter how preposterous Skaggs' convenient loss of memory may appear, it raises an issue for the jury. It is not for us to decide this issue. In light of Skaggs' detailed narration of the events leading up to his entry into Moore's IGA, his narration of his actions in selecting the desired item and proceeding to the cash register, then his memory of events afterward, it is a preposterous story. Nevertheless, it is the privilege of the jury to believe the unbelievable if the jury so wishes.

We observe that on cross-examination of his actions in the store, Skaggs almost stepped over the brink and did himself out of his entitlement to an intoxication instruction; however, he recovered himself and stoutly maintained his fortuitous blackout. In a new trial, Skaggs, if he tells the same story, will be entitled to an instruction on intoxication.

■ Turning to Skaggs' other assertions of error, he complains of the trial court's not conducting an evidentiary hearing on his competency to stand trial.

Skaggs filed a motion for a mental examination for the purpose of determining his mental competency to stand trial. This motion was granted and Skaggs was sent to a center for evaluation. A psychiatric evaluation and report was made to the trial court before trial but was not made a part of this record. No issue with regard to an evidentiary hearing was presented to the trial court.

The public defender attaches great significance to this. We are not advised of any factor that would indicate an evidentiary hearing. If the report concluded Skaggs was not competent, we are confident, since the report is extant, we would be favored with a motion to supplement the record. There is no suggestion of any conduct on the part of Skaggs that he was not competent, only a ridiculous assertion that failure to conduct an unnecessary hearing deprived Skaggs of due process. We observe that any sensible person of ordinary understanding perusing Skaggs' testimony would have no doubt about his competency to stand trial. Caught red-handed, he seized on the only factor—loss of memory—which would extricate him from the charge.

■ Skaggs next complains that the Commonwealth failed to prove he used a deadly weapon. He argues there is no evidence the pistol was loaded or capable of firing. We answered this tired argument in *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1976), and are not disposed to belabor this question further. Mishler makes the same argument.

■ Next Skaggs' assertion that he was entitled to an instruction on robbery in the second degree is frivolous. No request for such an instruction was made at trial, RCr 9.54(2), and had there been such a request, it was not required by any test that we can think of in light of the evidence.

■ Skaggs asserts that the trial court should have, on its own motion, made an inquiry of Henderson's competency as a witness. There is not even a suggestion in this record that Henderson might not be competent to testify as a prosecution witness. We are at a loss to comprehend the reasoning of the public defender in this respect. Henderson testified for Skaggs and Mishler in recanting the statement given to the police. The public defender characterizes him as a major prosecution witness. The statement may have been helpful to the prosecution, it was not vital. His

testimony was helpful to Skaggs and Mishler.

Four days after the trial, Henderson's attorney filed a motion requesting a mental examination based on counsel's belief that Henderson at the time of the commission of the crime was incompetent. The trial court ordered the observation. The public defender seems to rationalize that since Henderson's lawyer filed the motion four days after the trial, the court at the time of the trial could have had notice of the lawyer's opinion. We wonder why the public defender spends time in advancing such a meritless argument. This same argument is presented by Mishler.

Skaggs' argument regarding the propriety of the closing argument of the Commonwealth is without merit. There was no objection to the argument. We have reviewed that portion complained of and are of the opinion that it consists of reasonable inferences drawn from the evidence and is within the bounds of propriety.

■ It is apparent that the trial court failed to follow the mandatory presentencing and sentencing procedures set out in KRS 532.050 and KRS 532.010. This assertion of error by Skaggs is well taken and requires remand for the purpose of compliance with the statute. *Brewer v. Commonwealth*, Ky., 550 S.W.2d 474 (1977).

## II.

■ The thrust of Mishler's assertion that he was entitled to a directed verdict is his testimony that he was unaware of the commission of the offense and was not aware that Skaggs possessed a pistol. The argument is pursued on the basis that driving the car merely points the finger of suspicion and is not enough to take the case to the jury. We are of the opinion that the jury was not compelled to believe Mishler's story, and under the facts and circumstances of this case, a jury issue was raised. The jury found Mishler guilty, and we are of the opinion this finding was based on sufficient evidence.

■ Next Mishler argues that by virtue of a material variance with the charge in the indictment and the instructions he was prejudiced. There was no objection to the instructions. Even had there been an objection, we do not see how Mishler could possibly have been prejudiced. The indictment charged the robbery "by using and displaying a .22-caliber pistol, a dangerous instrument." The instructions used the language "threatened the use of immediate force . . . by pointing a pistol . . ." We are not advised by the public defender just how Mishler was prejudiced and reject the intellectual gymnastics in the public defender's brief attempting to characterize this as prejudicial error. The commentary to KRS 515.020, cited by Mishler, stands for the proposition that a pistol is a *deadly weapon*, other objects may or may not be "*dangerous instruments*" depending upon the circumstances of use. It would only have been necessary for the indictment to refer to "*a pistol,*" the use of the term "*dangerous instrument*" was superfluous but in our opinion not prejudicial to Mishler. Nor did this language put the Commonwealth to any further proof with regard to the pistol.

■ Next Mishler asserts error in that his silence at the time of his arrest was used for purposes of impeachment. There was no objection to this line of questioning for the simple reason that Mishler did not remain silent. According to the testimony of the police officer, Mishler when questioned after his arrest did not remain silent, but told the police officers "they were from out of town and were just driving around," and "driving around looking for work," and "would not admit to any knowledge of the robbery." Mishler did not deny these statements. Thus, the argument of the Commonwealth that he was telling his story at trial for the first time is not using a defendant's silence to be used to impeach an explanation subsequently offered at trial. Had Mishler exercised his right to remain silent at the time of his arrest, then the argument of the Commonwealth would have been improper. Cf. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

**682**

■ The trial court gave an accomplice instruction, RCr 9.62, reciting that Henderson *was* an accomplice. This instruction was not objected to by Mishler, who now complains that the question of whether Henderson was an accomplice should have been submitted to the jury. We are of the opinion an accomplice instruction should not have been given at all. The accomplice rule, RCr 9.62, is for the protection of the defendant. Ordinarily the instruction is given when the evidence for the Commonwealth is primarily that testimony given by the accomplice and other evidence of guilt is sparse. Here there was sufficient evidence to convict without the testimony of Henderson, which obviates the necessity for the accomplice instruction.

We note the trial court commented upon the instruction by way of explaining it to the jury. We are of the opinion Mishler, in view of this situation, was not prejudiced by the instruction. Cf. *Mouser v. Commonwealth*, 491 S.W.2d 821 (1973).

■ Mishler next asserts the trial court did not follow the mandatory sentencing procedures of KRS 532.020 and KRS 533.-010. The record does not disclose that these procedures were followed by the trial court; thus, remand is required for proper sentencing. *Brewer v. Commonwealth*, supra.

■ We turn now to a vexing problem which requires, in our view, further admonishment to the trial bench. Both Skaggs and Mishler were represented by the same lawyer, both now assert they were denied effective assistance of counsel in view of conflicting interests.

Skaggs and Mishler both argue the proposition in the abstract. They do not point to any conflicting interest which would have rendered their counsel ineffective. On the contrary, a careful perusal of the record reveals no conflict at all. We are not inclined to reverse this case on abstract arguments. Cf. *Ware v. Commonwealth*, Ky., 537 S.W.2d 174 (1976).

We recognize the dangers of multiple representation of defendants by one lawyer and the ever present possibility that unforeseen conflicts of interest between the defendants may arise at trial necessitating reversal. For this reason, we strongly suggest that the trial bench insist on separate representation for each defendant, particularly where counsel is appointed.

The judgment as to Mishler is remanded for proper sentencing procedures; in all other respects, it is affirmed.

The judgment as to Skaggs for robbery of the Foodette Market is remanded for proper sentencing procedures; in all other respects, it is affirmed.

The judgment as to Skaggs for robbery of Moore's IGA is reversed for a new trial with directions to give an instruction on intoxication should the evidence on the new trial be substantially the same.

All concur.