# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 13, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000036-MR

DATE 7/5/19 *Kim Redmon, DC*

WILLIE L. JAMES, JR.                                         APPELLANT

V.                   ON APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN GRISE, JUDGE
NO. 16-CR-00526

COMMONWEALTH OF KENTUCKY                      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Willie L. James, Jr., appeals from a judgment of the Warren Circuit Court convicting him of first-degree assault, first-degree unlawful imprisonment, first-degree possession of a controlled substance, possession of a defaced firearm, and being a persistent felony offender, and sentencing him to forty-three years in prison. He contends the trial court erred by: 1) admitting unduly prejudicial photos, and 2) denying his requested instruction on imperfect self-defense. Finding no reversible error, we affirm the judgment of the Warren Circuit Court.

## FACTUAL AND PROCEDURAL BACKGROUND

James and Shadonna Coleman were in a romantic relationship. After spending time apart because of relationship problems, the two reunited in the spring of 2016. It is undisputed that James shot Coleman on April 26, 2016.

The day of the crime, Coleman went to a job interview. When she left the motel at which the couple was staying, she mistakenly took James's cell phone. She looked through the phone and discovered text messages to other women. When Coleman returned to the motel, she confronted James about the messages. Coleman packed her luggage to leave, and James did likewise, joining Coleman in the car. The couple continued to argue, and James drew and held a gun on Coleman as she drove.

Coleman testified that she planned to escape by asking James to drive, and when they pulled over to exchange seats, she would run away. She stopped the car at a stop sign and got out. When an area resident drove by to check on the couple, James told him that everything was all right, but Coleman testified that she shook her head no.

After the man left, Coleman began to run. James shot her at least once before she fell to the ground. While she lay on the ground, James stood over her and shot her at least one more time. James returned to the car and left the scene.

Other drivers witnessed the shooting, called 911, and pursued James until law enforcement joined the pursuit. Officers recovered James's gun which he tossed from the vehicle during the pursuit. James was arrested. The police later performed a search of the vehicle pursuant to a warrant and seized among other items, two baggies of cocaine and a box of .38 caliber rounds.

The trial court instructed the jury on first-degree assault, first-degree assault under extreme emotional disturbance, kidnapping, first-degree

2

unlawful imprisonment, first-degree possession of a controlled substance, and possession of a defaced firearm. The jury found James guilty of first-degree assault, first-degree unlawful imprisonment, first-degree possession of a controlled substance, possession of a defaced firearm, and being a persistent felony offender. James was sentenced to prison for forty-three years. This appeal followed.

Additional facts pertinent to James's claims of error are set forth below.

## ANALYSIS

James claims the trial court erred by 1) allowing into evidence five unduly prejudicial photos and 2) refusing to instruct the jury on imperfect self-defense. These claims are addressed in turn.

### I. The trial court did not err in admitting the five contested photos.

James acknowledges that the trial court looked at the photos individually and conducted the Kentucky Rule of Evidence (KRE) 403 balancing analysis to weigh the probative value of the photos against their prejudicial effect. James contends, however, the trial court abused its discretion by permitting the Commonwealth to introduce five photos, adding little probative value, three of which were gruesome in nature.

Two bloodstain photos from the crime scene were introduced. One was a closeup photo of a pool of blood on the side of the road with a ruler placed beside it. The other was a more distant photo of the bloodstain showing a nearby water bottle, which also provided a reference for the stain size.

3

James objected to entry of these photos during trial citing *Hall v. Commonwealth*, 468 S.W.3d 814 (Ky. 2015). He argued that because there was no question that Coleman had been shot, the crime scene photos of the bloodstains were unnecessary to establish any element of the charged crime and were more prejudicial than probative. The Commonwealth correctly noted that just because a photo might be gruesome does not necessarily mean it should be excluded. *See id* at 827. The Commonwealth also argued that the photos helped the jury to understand the crime scene as a whole and the large pool of blood was probative to show the potentially life-threatening injury suffered by Coleman.[1]

The trial court noted that unlike with *Hall*, the photos did not depict a murder victim, but instead were clinical, crime scene photos which would not arouse the passions of the jurors unnecessarily and were highly probative for proving the serious nature of Coleman's injuries. The trial court also weighed the additional probative value of the photos in comparison to Coleman's testimony, noting that witness credibility is always at issue.

Coleman suffered gunshot wounds to her left breast, side, right labia, right buttock and left thigh. The shots damaged her liver and bladder. One postoperative photo introduced by the Commonwealth depicted a stapled

---

[1] *Pertinently, Kentucky Revised Statute (KRS) 508.010(1)(a) provides that "[a] person is guilty of assault in the first degree when . . . [h]e intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument." "Serious physical injury" means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ. KRS 500.080(15).*

4

incision running a course from the center of Coleman's breasts to the bottom of her abdomen.

James, citing *Hall*, argued that the photo was gory in nature and that since medical witnesses testified about the injuries and surgery, and other introduced photos showed her gunshot wounds, the postoperative photo added little probative value. The Commonwealth objected to the characterization of the photos as gruesome and cumulative. The trial court allowed introduction of one of two photos showing Coleman's incision following the required extensive surgery; although the surgery was described, the picture added value to the jury's understanding of the seriousness of the injuries, an element of the charged crime.

Finally, the police recovered a 50-shell ammunition box. One photo depicted, inside James's travel bag, the ammunition box showing its brand. The second photo was of the open ammunition box showing ten bullets removed.

James objected to the photos, arguing that because the gun and the spent casings would be admitted, it was more prejudicial than probative to show a large amount of extra unused ammunition, perhaps sending the message "something bigger was planned." The Commonwealth argued that the two photos were probative to show that the used ammunition came from James. The trial court ruled that as the ammunition box depicted the minimum amount of ammunition that could be purchased, the 50-shell box was not more prejudicial than probative. Furthermore, since the boxed shells

were stamped with the same brand and were the same size as the used casings, the trial court concluded the shells found within James's bag were probative to show that the shells in the gun came from James.

*Hall* was explicit in its direction to the trial court for applying KRE 403 when admitting gruesome photographs. "[I]n all cases in which visual media showing gruesome or repulsive depictions of victims are sought to be introduced over objection, as with all other types of evidence, the trial court must conduct the Rule 403 balancing test to determine the admissibility of the proffered evidence." *Id.* at 823. *Hall* explained that "[w]hen there is already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth, regardless of how much persuasive force it might otherwise have by itself." *Id.* at 824. Consequently, "the judge must consider the photographs within the full evidentiary context of the case, giving due regard to other evidence admitted as well as evidentiary alternatives, so as to ascertain each item's 'marginal' or 'incremental' probative worth for purposes of weighing that value against the risk of prejudice posed by the evidence." *Id.* Nevertheless, because the Commonwealth has the burden of proving the crime beyond a reasonable doubt, photos showing the nature of the victim's injuries and the circumstances surrounding the commission of the crime will rarely be deemed inadmissible. *Id.* at 825, 827 (citation omitted). "Only minimal probativeness to a fact of consequence is necessary for evidence to be relevant and thus

generally admissible unless excluded by Constitution (federal or state), statute, or other evidentiary rule." *Id.* (n.11, internal citations omitted).

Although *Hall* provided valuable guidance when dealing with gruesome photos, at base, it reminded trial courts that under KRE 403 each piece of proffered evidence must be weighed individually.

> [Considering the specific context of the case,] [t]here are three basic inquiries that the trial court must undertake when determining admissibility of relevant evidence under Rule 403. First, the trial court must assess the probative worth of the proffered evidence; second, it must assess the risk of harmful consequences (*i.e.*, undue prejudice) of the evidence if admitted; and last, it must evaluate whether the probative value is substantially outweighed by the harmful consequences. These inquiries are very fact intensive and are totally incompatible with bright line rules and rulings.

*Id.* at 823 (internal quotations and citations omitted).

Furthermore, even if the trial court admitted cumulative evidence, it is harmless error, s*ee Combs v. Commonwealth*, 965 S.W.2d 161, 165 (Ky. 1998), unless undue prejudice outweighs the incremental probity of the cumulative evidence, *Hall*, 468 S.W.3d at 824 (citations omitted). "The balancing of the probative value of [the photos] against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

A review of the record establishes the trial court weighed the prejudicial effect of each of the photos against its probative value within the full evidentiary context of the case. *Hall*, 468 S.W.3d at 823, 824. We agree with the trial court that the challenged photos are relevant and highly probative of

7

the commission of the crime by James and the nature and severity of Coleman's injuries, and were properly used by the Commonwealth to meet its burden of proving the crime beyond a reasonable doubt. *Id.* at 825. Furthermore, although James characterizes three of the photos as gruesome (the bloodstain photos and postoperative scar photo), nothing distinguishes any of these photos from those routinely entered into evidence. *See generally, Hall*, 468 S.W.3d at 821; *Ragland v. Commonwealth*, 476 S.W.3d 236, 249 (Ky. 2015). The photos are not in the realm of being so "inflammatory that their exclusion should be required in spite of the general rule favoring inclusion, particularly in light of their substantial probative worth." *Ragland*, 476 S.W.3d at 248. The trial court's decision to admit the photos was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *English*, 993 S.W.2d at 945. Moreover, even if they constituted cumulative evidence, admission of the photos was harmless. *Combs*, 965 S.W.2d at 165.

## II. The trial court did not err by refusing to give an imperfect self-defense instruction.

James's second claim of error is that the trial court erred when denying him an instruction on imperfect self-defense as a lesser-included offense of first-degree assault. James contends that the trial court's refusal to give the requested instruction violated his right to present a defense.

James testified in his own defense. He acknowledged that he shot Coleman, but stated he felt overwhelmed by the situation. He described his relationship with Coleman as rocky and testified that he once called the police

8

because Coleman was assaulting him. He further stated he was apprehensive about Coleman's family when he and Coleman reunited.

James also testified that he suffered from paranoia and had been diagnosed with paranoid schizophrenia, although he was off his prescribed schizophrenic medication at the time of the incident. He explained that when he experiences anxiety, it is extreme anxiety. James stated the events leading up to the point he shot Coleman — the arguing and physical interaction before she went to the interview, the arguing upon her return, Coleman's erratic driving including her hitting the brakes in the middle of the road, Coleman refusing to let him out of the car, his grabbing the steering wheel to make Coleman stop the car — caused him to become apprehensive and compulsive to the point that he pulled out his gun to get her attention because he felt his life was in danger. When Coleman stopped the car, he panicked, and then "freaked out" even more when the "scary looking" stranger approached the car. He stated he became irate, "lost control" and hurt Coleman. During his testimony, James admitted that Coleman did not deserve to get shot.

James believes he was entitled to the imperfect self-defense instruction because the jury could have believed that he was defending himself when he shot Coleman. He argues, citing *Mishler v. Commonwealth*, 556 S.W.2d 676, 680 (Ky. 1977), that "no matter how preposterous" the evidence, "it is the privilege of the jury to believe the unbelievable."

"In a criminal case, it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions

9

applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999) (citing RCr 9.54(1)); *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954). "Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015) (citation omitted). The trial court's decision not to give a jury instruction is reviewed for abuse of discretion. *Id.* at 204. The proponent of an instruction is entitled to the instruction, if, when viewing the evidence in his favor, the evidence would permit a reasonable juror to make the finding the instruction authorizes. *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013) (citing *Allen v. Commonwealth*, 338 S.W.3d 252 (Ky. 2011)).

KRS 503.050(1), the self-protection statute, provides that "[t]he use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself *against the use or imminent use of unlawful physical force by the other person.*" (Emphasis added.) "KRS 503.050(1) bases the self-defense justification on the *subjective* standard; that is, the defendant's use of force is justifiable if he *actually* believes, correctly or incorrectly, that force is necessary to protect himself from an attack from another person." *Commonwealth v. Hasch*, 421 S.W.3d 349, 362 (Ky. 2013). "The justification is also available when there is a mistaken belief in the existence of use or imminent use of unlawful physical force by another." *Lickliter v. Commonwealth*, 142 S.W.3d 65, 71 (Ky. 2004).

10

In this case, the evidence simply did not support a jury instruction on imperfect self-defense. No evidence exists to support a reasonable juror finding that James believed, mistakenly or not, that Coleman was using or was about to use unlawful physical force against him at the time he shot her. According to Coleman's testimony, she was running away from James the first time he shot her and while lying on the ground, leg extended upward in a defense posture, James stood over her and shot her again. James's testimony did not dispute these aspects of Coleman's testimony and he did not otherwise provide any testimony that Coleman tried to use physical force against him when they were out of the vehicle. James's testimony that he was fearful of Coleman's family and felt endangered when Coleman was driving erratically is irrelevant to whether he believed Coleman was attacking him or about to attack him, justifying his protecting himself. The facts James relies on to support his argument that he was erroneously denied an imperfect self-defense instruction could not allow a reasonable juror to believe that he was defending himself when he shot Coleman.

Although James argues that *Mishler* supports a different conclusion, we disagree. In *Mishler*, testimony existed, although it may have seemed preposterous, which supported the denied instruction. In *Mishler*, the trial court refused to give a defendant charged with robbery an instruction on intoxication, a defense to the intent to commit the crime. 556 S.W.2d at 679-80. The defendant testified to using drugs and that at the very moment of the robbery, he lost his memory and did not know what he was doing. *Id.* at 680.

11

However, the defendant's testimony revealed no other memory impairment surrounding the robbery. *Id.* This Court explained that '[n]o matter how preposterous [the defendant's] convenient loss of memory may appear, it raises an issue for the jury . . . [and] it is the privilege of the jury to believe the unbelievable if the jury so wishes," and accordingly concluded the intoxication instruction was improperly denied. *Id.*

Unlike *Mishler*, no evidence in this case supports the requested instruction; no evidence was proferred that Coleman was using or about to use unlawful physical force against James at the time he shot her. The imperfect self-defense instruction is not supported by the evidence and the trial court did not abuse its discretion in rejecting such an instruction.

## CONCLUSION

The Warren Circuit Court's judgment is affirmed for the foregoing reasons.

All sitting. All concur.

12

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Newberg, II
Assistant Attorney General
Official of Criminal Appeals