# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: AUGUST 14, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0332-MR

DAZZAMON R. JONES                                                    APPELLANT

V.
ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M SUMME, JUDGE
NO. 23-CR-00909

COMMONWEALTH OF KENTUCKY                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A jury of the Kenton Circuit Court found Appellant Dazzamon R. Jones guilty of the murder of Edgar Lopez and recommended the maximum sentence of life in prison. The trial court sentenced Jones in accordance with that recommendation. Jones now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Following a careful review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 8, 2023, Brian Gray approached Edgar Lopez from behind on the street and hit him in the head three or four times with a brick. Lopez responded to Gray's attack by slamming Gray's head into the ground several times, after which Gray stumbled away bloodied and battered. A witness testified that as Gray stumbled away, Lopez smashed a bottle on the ground

and stated that he knew where Gray lived and that he was going to run Gray over with his car. Another witness similarly testified that he heard Lopez state he was going to run over or shoot Gray.

Appellant Jones, who ultimately killed Lopez, testified that he observed the fight between Gray and Lopez while sitting in his car. According to Jones, as Gray staggered away from the fight, Gray passed Jones' car and stated to Jones that Lopez was trying to kill him. Jones testified that at that time, he did not actually believe Lopez was trying to kill Gray. However, he then saw Lopez in a rage, yelling, and throwing a bottle on the ground before pursuing Gray in his car. Jones testified that he then believed Lopez was in fact trying to kill Gray, and therefore drove in pursuit of Lopez.

Gray's aunt and uncle Ramada and Floyd Harris testified they were checking on a home in the area that they owned when they saw a bloody Gray stagger out of an alley. Gray then staggered into the yard of the Harris' home and lay down behind a low cinderblock wall that surrounded the yard while Ramada called 911. Witness testimony and crime scene photos entered into evidence at trial establish that Lopez then pulled his car out from an alley across the street from the yard where Gray had taken refuge, turned right, and stopped his car. Lopez's car was thus stopped in the far lane of traffic parallel to the wall behind which Gary was lying. Ramada testified she then heard Lopez saying something to Gray.

Jones drove up shortly thereafter armed with an AR-15 he had previously purchased from someone at a White Castle. He immediately exited

2

his vehicle and started shooting at Lopez, who was still sitting in his car which remained stationary in the far lane of traffic parallel to the wall behind which Gray was lying. Lopez was shot 29 times and died as a result of the shooting.

At trial, Jones testified that when he pulled up behind Lopez, he got out and saw Lopez saying something while his hand was hanging out of the window. Jones contended that he thought Lopez had a gun, although he also testified he did not actually see Lopez with a gun. He told the jury that he felt Lopez was going to kill Gray, that he shot Lopez to keep him from killing Gray, and that he had intended only to stop Lopez, not to kill him. He acknowledged that Gray was lying behind the low cinderblock wall around the yard at the time of the shooting, but that he believed Gray was pinned in. Jones also acknowledged that Lopez was sitting in his car, and would have had to exit the vehicle and go to the yard where Gray was located to harm him. Jones also did not dispute that he had emptied the entire magazine during the course of the shooting.

Police responded to a call about the shooting and arrived on the scene where they discovered Lopez dead inside his bullet-riddled car. No weapons were located in the vehicle, nor did police discover any weapons on Lopez's body. Police reviewed surveillance video of the shooter's car and determined it was registered to Jones. They could not locate Jones or his vehicle for several days, during which they obtained a search warrant for Jones' house. During the execution of that warrant police discovered an AR-15 magazine and other

3

rounds of ammunition. Jones turned himself in to police four days after the shooting.

Jones was indicted, and the jury was ultimately instructed on charges of murder as well as lesser-included offenses of first-degree manslaughter either under extreme emotional disturbance ("EED") or intended only to cause serious physical injury, and second-degree manslaughter resulting from wanton conduct. However, the trial court denied Jones' request for an instruction on the defense of protection of another. The jury found Jones guilty of murder and recommended the maximum sentence of life in prison, which the trial court imposed. Jones now appeals as a matter of right.

### ANALYSIS

Jones raises four issues for our review: (1) whether the trial court erred in denying his request for an instruction on the defense of protection of another; (2) whether the trial court erred in admitting statements Gray made to law enforcement, despite the fact Gray was not called as a witness at trial; (3) whether the trial court erred in allowing Lopez's live-in girlfriend to provide victim impact testimony; and (4) whether Jones was unduly prejudiced by the prosecutor's closing argument. We review each issue in turn, providing additional facts as necessary.

I. **The Trial Court Did Not Abuse Its Discretion In Refusing To Instruct The Jury On Protection Of Another.**

Jones first argues that the trial court erred in refusing to instruct the jury on the defense of protection of another. Jones tendered an instruction that included the defense, and thus his objection is preserved. *Brafman v.*

4

*Commonwealth*, 612 S.W.3d 850, 857 (Ky. 2020).  Because this allegation of error is preserved, "we review the trial court's decision not to give the instruction for abuse of discretion[.]"  *Id.*  Indeed, as we have previously observed, because a trial court's decisions in the crafting of jury instructions "are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard."  *Sutton v. Commonwealth*, 627 S.W.3d 836, 848-49 (Ky. 2021) (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015)).

"[A]ll criminal defendants have a due process right to present a defense, including jury instructions that give effect to a defendant's theory of the case. It is precisely because of this due process right that trial courts have a duty to instruct the jury on the whole law of the case."  *Breazeale v. Commonwealth*, 600 S.W.3d 682, 691 (Ky. 2020).  Thus, a trial court must provide "instructions applicable to every state of the case deducible or supported to any extent by the testimony."  *Gribbins v. Commonwealth*, 483 S.W.3d 370, 373 (Ky. 2016) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999).  In determining whether the evidence presented at trial requires the giving of a requested instruction, "we must ask ourselves, construing the evidence favorably to the proponent of the instruction, whether the evidence would permit a reasonable juror to make the finding the instruction authorizes."  *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013).  If so, the instruction must be given.  *Brafman*, 612 S.W.3d at 858 ("[A] trial court is

5

required to instruct the jury on affirmative defenses and lesser-included offenses if the evidence would permit a juror reasonably to conclude that the defense exists or that the defendant was not guilty.") (quoting *Breazeale*, 600 S.W.3d at 691).

Here, Jones requested and was denied an instruction that would have allowed the jury to find that his killing of Lopez was justifiable because it was undertaken in lawful protection of another. Our protection-of-another statute provides in relevant part that:

> The use of deadly physical force by a defendant upon another person is justifiable when:
>
> (a) The defendant believes that such force is necessary to protect a third person against imminent death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, or other felony involving the use of force, or under those circumstances permitted pursuant to [the "stand your ground" statute]; and
>
> (b) Under the circumstances as they actually exist, the person whom he seeks to protect would himself have been justified under [the perfect and imperfect self-defense statutes] in using such protection.

Kentucky Revised Statutes ("KRS") 503.070(2). Thus, the statute sets forth two elements which *both* must be satisfied before a defendant's killing of another in protection of a third person is justified: first, the defendant must have believed deadly force was necessary to protect the third person from at least one of the statutorily enumerated harms; and second, the third person himself also would have been justified under the circumstances as they actually existed in using deadly force in self-defense, whether perfect or imperfect. As we have

6

previously noted, while the first element is subjective, the second element sets forth an objective standard, because "the defender is judged in accordance with the circumstances *as they actually existed* with respect to whether the person being protected would have been privileged to use deadly physical force in self-protection." *Springer v. Commonwealth*, 998 S.W.2d 439, 455 (Ky. 1999) (emphasis added); *see also id.* (finding defendant not entitled to protection-of-another instruction where "[u]nder the actually existing facts, there was no need to kill [victim] in order to protect [third person] from 'imminent death, serious physical injury . . . or [forcible] sexual intercourse' at his hands") (quoting KRS 503.070(2)(a)).

Thus, in determining whether a jury should be instructed on the defense of protection-of-another in a case involving deadly force, a court must ask two questions. First, the court must ask whether the evidence presented at trial could allow a juror to reasonably conclude that the defendant subjectively believed deadly force was necessary to protect the third person from a statutorily enumerated harm set forth in KRS 503.070(2)(a). Second, the court must ask whether the evidence presented at trial could also allow a juror to reasonably conclude that objectively, the protected third person would himself have been justified under the circumstances as they actually existed in using deadly force in either perfect or imperfect self-defense in conformity with the requirements set forth in KRS 503.050 and KRS 503.060.

Here, as to the first element, the evidence at trial was sufficient to allow a juror to reasonably conclude that Jones subjectively believed deadly force was

7

necessary to stop Lopez from killing Gray. Indeed, Jones specifically testified at trial that he believed Lopez was going to kill Gray, and that he (Jones) believed he needed to stop Lopez from doing so. Thus, the first element was satisfied.

However, a protection-of-another instruction was warranted only if the evidence was *also* sufficient to satisfy the second element of KRS 503.070(2). That is, the trial court was required to give the instruction only if the evidence also could have allowed a juror to reasonably conclude that Gray himself would have been justified under the circumstances as they actually existed in using deadly force against Lopez in self-defense. KRS 503.070(2)(b). And Gray would have been justified in using deadly force against Lopez only if he both faced an actual or imminent use of unlawful force and believed that deadly force was necessary to protect himself against death or serious physical injury. KRS 503.050(1), (2).[1] We conclude that the trial court did not abuse its discretion in finding that this standard was not met.

At the time of the shooting, Lopez was not using force against Gray. Nor could the evidence support a finding that any use of force by Lopez was

---

[1] KRS 503.060 sets forth requirements for the defense of imperfect self-protection. The statute provides in relevant part that one's use of force is not justified where he is the initial aggressor, unless either 1) his initial force is nondeadly and is answered with force causing a belief of imminent danger of death or serious physical injury, or 2) he withdraws from the encounter, communicates his intent to do so, and nevertheless is faced with a continuing or threatened use of unlawful force. Here, though Gray was the initial aggressor, Lopez pursued him even after he communicated his intent to cease combat by retreating from the scene of the initial fight. Thus, Gray's mere status as the initial aggressor alone would not have barred his use of force in self-protection under KRS 503.050.

imminent. "Imminent" for purposes of KRS 503.050 is defined as "impending danger," a term we have construed to require that the use of force be "[a]bout to occur at any moment." KRS 503.010(3); *Lickliter v. Commonwealth*, 142 S.W.3d 65, 71 (Ky. 2004) (quoting Webster's II New Riverside University Dictionary 611 (1984)). However, the evidence could not support a finding that at the time of the shooting, Lopez was about to "at any moment" strike Gray with his car. Indeed, when Jones opened fire Lopez was sitting in his vehicle across the street from where Gray was lying behind a wall. Though the vehicle was running and was later discovered to be in gear, it remained stationary. And perhaps most notably, Lopez's vehicle was in any event across the street from and *parallel* to the wall behind which Gray was lying, pointed away from rather than at Gray. Thus, while witnesses admittedly testified that Lopez had threatened to run Gray over with his car, to do so Lopez would have had to press the accelerator and then drive in an arc across the opposing lane of traffic, up over the curb, around a large tree that was along the curb, and then finally towards and through the low cinderblock wall behind which Gray was lying. Under such circumstances, there could be no reasonable finding that Lopez was about to "at any moment" run over Gray as would be necessary for Gray himself to have used deadly force against Lopez.

Nor did Lopez brandish a weapon, exit his vehicle, or otherwise engage in conduct that could support a finding that he was about to use deadly force or force causing serious physical injury against Gray "at any moment." Indeed, a search of Lopez and his vehicle after the shooting revealed no weapons. Thus,

9

because the evidence could not support a reasonable finding that Gray faced an imminent use of force by Lopez, and because Gray himself therefore could not have used deadly force against Lopez in self-defense, the trial court did not abuse its discretion in refusing to provide an instruction permitting a finding that Jones' killing of Lopez was justified as protection of another.

Jones argues nonetheless that he was entitled to a protection-of-another defense given our holding in *Mishler v. Commonwealth* that even a preposterous defense theory warrants an instruction. 556 S.W.2d 676 (Ky. 1977). We so held because "it is the privilege of the jury to believe the unbelievable if the jury so wishes." *Id.* at 680. However, we find *Mishler* distinguishable from the facts here.

In *Mishler*, the defendant was charged with robbing an IGA store. *Id.* at 678. At trial, the defendant testified that he remembered the events both leading up to the moment he approached the cash register and his return to his vehicle in the parking lot, but that he blacked out from intoxication in the intervening time during which he actually demanded money from the clerk. *Id.* at 679. He therefore requested an instruction on the defense of intoxication, which the trial court refused to give. *Id.* We held that even though the story was "preposterous," it raised an issue of fact for the jury, which may choose to believe the unbelievable if it so wishes. *Id.* at 680. As such, the trial court erred in refusing to give the requested intoxication instruction. *Id.* Here, unlike *Mishler*, there was simply no evidence—preposterous or otherwise—to

10

support the requested jury finding, *i.e.,* that Gray faced an imminent use of force by Lopez.

Moreover, the physical impossibility of Lopez "at any moment" striking Gray with his stationary vehicle, which was parked parallel to and across the street from the wall behind which Jones was lying, also distinguishes this case from *Mishler*. In *Mishler*, it was not impossible *as a matter of the physical laws of nature* for the defendant to have blacked out solely at the moment the robbery was effectuated. Thus, the jury should have been allowed to consider his intoxication defense. In contrast, here it would have been physically impossible for Lopez, whose vehicle was across the street and pointed away from Gray, to have been "about to at any moment" driving his vehicle towards Gray in a threatening manner. Under such circumstances, we have noted that the usual reservation of fact-finding to the jury need not be applied in blind ignorance of the laws of physics:

> It is, to be sure, ordinarily the function of a jury to determine the weight and effectiveness of the evidence. But . . . the jury may not . . . base its verdict upon a statement as to what occurred or how something happened when it is opposed to the laws of nature or is clearly in conflict with the scientific principles, or base its verdict upon testimony that is so incredible and improbable and contrary to common observation and experience as to be manifestly without probative value.

*Ross v. Commonwealth*, 531 S.W.3d 471, 476 (Ky. 2017) (quoting *Coney Island Co. v. Brown*, 290 Ky. 750, 162 S.W.2d 785 (1942)); *see also id.* (noting that rule reserving factual determinations to the jury "cannot apply where the only evidence upon which such adverse party rests his

11

right to succeed consists of a statement of alleged facts, inherently impossible and absolutely at variance with well-established and universally recognized physical laws.") (quoting *Louisville & N.R. Co. v. Chambers*, 165 Ky. 703, 178 S.W. 1041 (1915)).

As such, Jones was not entitled to a protection-of-another defense premised on his physically impossible theory that Gray faced an imminent use of force by Lopez, who was seated unarmed in a stationary vehicle pointed away from Gray who was lying behind a low wall. Quite simply, while under *Mishler* a preposterous but scientifically possible story supported by the evidence at trial may require the giving of an instruction, a trial court is not required to instruct the jury on a theory of the case premised on the physically impossible. As such, we find no reversible error in the trial court's refusal to provide a protection-of-another instruction to the jury.

II. **Though Admission Of Gray's Statements To Law Enforcement Was Error, It Was Harmless.**

Jones next argues the trial court erred in admitting recorded statements that Gray, who was unavailable for trial, made to law enforcement the day after the shooting. Gray did not testify at trial because he also had pending charges from his conduct attacking Lopez in the same incident. Jones objected to the admission of Gray's statements to law enforcement, and his objection is thus preserved. Kentucky Rule of Evidence ("KRE") 103(a)(1). We therefore review for abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007) ("Since the trial court's unique role as a gatekeeper of evidence requires on-the-

12

spot rulings on the admissibility of evidence, we may reverse a trial court's decision to admit evidence only if that decision represents an abuse of discretion.").

At trial, Jones sought to offer testimony that Gray walked by Jones' car after the initial fight and said Lopez was trying to kill him. The Commonwealth objected that the statement was inadmissible hearsay. Jones responded that the statement was not admitted to actually prove that Lopez was trying to kill Gray, but rather only to demonstrate Jones' state of mind upon hearing that statement. The trial court agreed that the statement was not hearsay because it went to prove Jones' state of mind upon hearing the statement rather than whether Lopez actually intended to kill Gray. The trial court thus allowed Jones to testify to the statement.

In rebuttal, the Commonwealth sought to play clips of Gray's interview with law enforcement the day after the shooting that it contended were inconsistent with Jones' testimony that Gray had said Lopez was trying to kill him. The Commonwealth asserted to the trial court that the statements were admissible under KRE 806, which permits impeachment of the credibility of a non-testifying declarant whose hearsay statements have been admitted into evidence. Jones argued that the statements were not admissible under KRE 806 because the initial statement by Gray had not been admitted as hearsay but rather to prove Jones' state of mind.

The trial court allowed the Commonwealth to play several of Gray's statements for the jury. Those statements included that 1) Gray did not want

13

Lopez to die because of the fight and would not have shot him simply because of the fight; 2) the fight arose because Gray and Lopez had an understanding they would fight one another the next time they met, but the understanding did not go so far as to include that either would shoot the other; and 3) Gray did not want Lopez dead simply because of the fighting. The apparent purpose of the evidence was to persuade the jury that either Gray did not actually tell Jones that Lopez was trying to kill him, or that Gray himself did not believe that to be the case.

Jones now argues that the trial court erred in admitting Gray's statements to law enforcement, given that Gray did not testify at trial. First, Jones contends Gray's statements were not admissible under KRE 806. We agree.

KRE 806 provides in relevant part that

> [w]hen *a hearsay statement* has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.

(Emphasis added). As this plain language makes clear, KRE 806 permits impeachment of the credibility of a non-testifying declarant only if other "hearsay" by that declarant has been admitted into evidence. Our Rules define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

14

asserted." KRE 801(c) Thus, a statement is hearsay only if it is *both* 1) not made by the declarant at the trial or hearing, *and* 2) offered in evidence to *prove the truth* of what was asserted *in the out-of-court statement.* As a corollary—and as we have previously noted—an out-of-court statement offered for some purpose *other* than to prove the truth of what was asserted in that statement simply is *not* hearsay. *Luna v. Commonwealth*, 460 S.W.3d 851, 872 (Ky. 2015) ("[T]he evidence is admissible because it is *not* hearsay. Indeed, no hearsay exception . . . is necessary as [the] statements were not offered for the truth of the matter asserted.").

Here, after Jones testified that Gray said Lopez was trying to kill him, the Commonwealth sought to introduce Gray's statements to law enforcement under KRE 806 to contradict that testimony. However, the trial court did not admit Gray's statement that Lopez was trying to kill him to prove the truth of the matter asserted in that statement, *i.e.,* that it was true Lopez was trying to kill Gray. Rather, the trial court admitted the statement for a different purpose, namely as proof of Jones' state of mind upon hearing Gray say that. As such, because Gray's statement was not admitted to prove that Lopez was in fact trying to kill Gray, but rather for a different purpose, it was not admitted as and did not constitute "hearsay."

Thus, because KRE 806 applies only where "hearsay" of a non-testifying declarant has been admitted, and because Gray's statement that Lopez was trying to kill him was not "hearsay" because it was admitted for a purpose other than to prove its truth, KRE 806 was not a permissible basis to admit

15

Gray's later statements to law enforcement.  Indeed, because the statement was not admitted to prove that Lopez was in fact trying to kill Gray, but rather only Jones' state of mind upon hearing that statement, the ultimate truth of the statement was irrelevant and thus there was no need for the Commonwealth to impeach Gray or his statement.  *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 4.35[4][d] n.15 (2023) ("KRE 806 has no application to out-of-court statements admitted into evidence for some purpose other than to prove the truth of their contents (non-hearsay), for in this situation the credibility of the declarant is insignificant and beyond attack."); *see also United States v. Pena*, 24 F.4th 46, 68 (1st Cir. 2022) (noting that analogous Federal Rule of Evidence 806 "allows an attack on a non-testifying declarant's credibility if the declarant's out-of-court statement is <u>admitted into evidence for its truth</u>.  Otherwise, the out-of-court statement would not constitute admissible hearsay.") (citation omitted).  Thus, the trial court erred in concluding that KRE 806 authorized the admission of Gray's later statements to law enforcement.

The Commonwealth argues that the statements were also admissible under KRE 803(3).  We disagree.  That Rule provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition" is not excluded by the hearsay rules.  Notably, however, the statement must be one of a "then existing" state of mind or condition.  It does not permit the admission of statements recalling an earlier state of mind or condition:

16

> The state-of-mind exception is limited to a statement about a then-existing mental state or condition. The "crucial component of this [exception] [i]s contemporaneity of the declarant's state of mind and the statement describing it," and it "le[aves] no room for the use of a statement describing a state of mind that existed at some early time." . . . Thus, the statement "I felt scared yesterday" would not be admissible, but the statement "I feel scared now" would be, if relevant to a given case.

*Dillon v. Commonwealth*, 475 S.W.3d 1, 22-23 (Ky. 2015) (citations omitted).

Here, each of the statements admitted by the trial court were made by Gray to law enforcement the day after the killing. Each related to what Gray's mental state or condition either before or at the time of his fight with Lopez *the day before*. Thus, because the statements did not relate to a "then existing" state of mind and condition, they also were not admissible under KRE 803(3).

Jones also contends that the admission of Gray's statements to law enforcement violated Jones' rights under the Confrontation Clause. Again, we agree.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[2] U.S. CONST. amend. VI. Admission of an out-of-court testimonial statement violates this Clause unless the declarant is unavailable and the defendant has had a "prior opportunity for cross-examination."[3] *Crawford*, 541 U.S. at 68. Here, Gray's statements were made

---

[2] This provision of the Federal Constitution applies to both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004).

[3] The out-of-court statement may of course separately be inadmissible hearsay. Whether introduction of an out-of-court statement violates our hearsay rules however

17

to law enforcement during the course of the post-shooting investigation and thus were testimonial. *Id.* at 52 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."). In addition, Gray was also unavailable for trial, given that he faced charges arising out of the same incident. For the same reason, Jones also had no prior opportunity to cross-examine Gray regarding his statements to law enforcement. Thus, the admission of Gray's statements to law enforcement also violated Jones' rights under the Confrontation Clause.

While we find the trial court erred in admitting Gray's statements to law enforcement, we nonetheless also conclude the resulting error was harmless and therefore does not warrant reversal. As to the non-constitutional error of admitting those statements in violation of our hearsay rules, we ask whether we can nonetheless say with fair assurance that the judgment was not substantially swayed by that error. *Dillon*, 475 S.W.3d at 23 ("A non-constitutional evidentiary error . . . is harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.") (quoting *Harris v. Commonwealth*, 384 S.W.3d 117, 125 (Ky. 2012)). At trial, there was no dispute that Jones shot Lopez. Indeed, he testified to having done so, and asserted that he did so in defense of Gray. The task of the jury was then to determine whether that conduct constituted criminal homicide and

---

is a separate and distinct consideration from whether its introduction would violate the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (noting that out-of-court statements not within the scope of the Confrontation Clause nonetheless remain "subject to traditional limitations upon hearsay evidence.").

18

if so, whether the appropriate conviction was for murder, first-degree manslaughter under EED or with intent to cause serious physical injury, or second-degree manslaughter resulting from wanton conduct. The matters discussed in Gray's statements to law enforcement—namely whether Gray himself would or would not have shot Lopez—were irrelevant to that determination. In other words, Gray's statements to law enforcement simply did not bear in any way on any findings the jury needed to make. Nor were the statements gruesome, disturbing, or emotionally charged. As such, there is no basis to conclude that the erroneous admission of those statements in any way swayed the jury's verdict.

As for the constitutional error of admitting Gray's statements to law enforcement in violation of Jones' rights under the Confrontation Clause, we must consider whether the error was "harmless beyond a reasonable doubt." *Dillon*, 475 S.W.3d at 15. An error is harmless beyond reasonable doubt "if there is no 'reasonable possibility that exclusion of the evidence complained of might have contributed to the conviction.'" *Commonwealth v. Armstrong*, 556 S.W.3d 595, 604 (Ky. 2018) (quoting *Talbott v. Commonwealth*, 968 S.W.2d 76, 84 (Ky. 1998)). Again, because Gray's statements to law enforcement were wholly irrelevant to the factual determinations the jury needed to make, we likewise conclude there is also no possibility that the error in admitting those statements might have contributed to Jones' conviction. Thus, the harmless admission of those statements does not require reversal.

19

### III. Technical Error In Allowing Lopez's Live-In Girlfriend To Provide Victim Impact Testimony Was Harmless.

Jones next argues that the trial court erred by allowing Ebony Tolliver, Lopez's live-in girlfriend of four years and the mother of a child Lopez was raising as his own, to provide victim impact testimony during the penalty phase of the trial. Jones objected to Tolliver's testimony because she did not fall within the categories of persons permitted to provide victim impact testimony under KRS 421.500(1)(c).[4] Because Jones objected to Tolliver's testimony, his argument is preserved. KRE 103(a)(1).

KRS 421.500 sets forth an enumerated list of relations permitted to provide victim impact testimony during the penalty phase of a criminal trial involving a deceased victim. Those persons are limited to a spouse, an adult child, a parent, a sibling, and a grandparent. KRS 421.500(1)(c); *see also* KRS 532.055(2)(a)(7) (permitting the Commonwealth to present evidence during the penalty phase of "[t]he impact of the crime upon the victim or victims, as defined in KRS 421.500"). Here, because Tolliver was not married to Lopez, she was not a "spouse." Nor was she any of the other relations allowed to provide victim impact testimony under the statute. As such, it was technically error for the trial court to allow her to provide victim impact testimony. *See Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012) (finding that trial court's permitting of murder victim's first cousin to testify was "technically error"

---

[4] The Commonwealth also called Lopez's mother to testify as a victim, without objection.

20

because the first cousin "fell outside the statutorily mandated list of potential witnesses.").

However, as noted above, non-constitutional errors in the admission of evidence are subject to harmless error review. *Dillon*, 475 S.W.3d at 23. We have previously found that technical violations of KRS 421.500 are harmless if the non-qualifying witness nonetheless had a sufficiently close relationship with the victim to provide relevant testimony and did not testify in a manner that would be unexpected from a qualifying relation listed in the statute. *Hunt v. Commonwealth*, 304 S.W.3d 15, 48-49 (Ky. 2009) (finding harmless error where there was "no doubt" a qualifying relation would have been as emotional about the loss of the victim as the non-qualifying witness); *see also Elery*, 368 S.W.3d at 98 (finding no palpable error where "[i]t is clear from the testimony given that [non-qualifying witness] knew the victim well, and there is little doubt in this instance that a family member described in KRS 421.500 would have delivered powerful testimony as well.").

Here, Tolliver had lived with Lopez for at least four years, and he had acted as a father to her child. There is little reason to believe she was unable to provide relevant information to the jury about the impact of his death on those close to him. Nor is there anything inherent in the lack of a formal marriage between Tolliver and Lopez that would support a conclusion her testimony would have differed from that of a lawfully married spouse. Put differently, Tolliver was sufficiently close to Lopez to provide relevant victim impact testimony, and her testimony would have been no more or less

21

impactful had she been lawfully married to him.  As such, any technical error in admitting Tolliver's victim impact testimony was harmless and does not warrant reversal.

**IV. The Prosecutor's Closing Argument Was Not Prosecutorial Misconduct.**

Finally, Jones argues that he was unduly prejudiced by the following statement made by the prosecutor during closing argument:

> Prison sentences, obviously they're meant to punish, they're meant to protect the public.  They're also meant as deterrence for anybody out there with an assault rifle that might think about doing the same thing, executing a man who didn't even see it coming.  Let your verdict, the sentence you impose, serve all of those purposes:  punishment, public protection, and deterrence.  When the public sees that video[5] that you all have watched this week, they're going to be as shocked as I'm sure you were.  Let your sentence deter anyone from committing that same act, engaging in that same conduct.  Show [Jones] the same mercy he showed [Lopez] when he splattered brains all over the ceiling of his car and impose a life sentence.

Jones now contends that by coupling a deterrence argument with a reference to the public's likely perception of evidence seen during the trial, the prosecutor made an impermissible "send a message" argument.  Jones acknowledges he did not object at trial and that this allegation of error is therefore unpreserved.  We therefore review for palpable error.  Rule of Criminal Procedure ("RCr") 10.26.

We first observe that the vast majority of the prosecutor's statement consisted solely of wholly permissible references to the punitive and deterrent effect of criminal sentences.  As we have previously noted,

---

[5] The referenced video is of surveillance footage from near the crime scene.

> [S]o long as the jury is well aware that it is sentencing the particular defendant before it—with his or her good points and bad—on the crime for which he or she has been convicted, there is no prejudice in the prosecutor commenting on the deterrent effect of that sentence. . . . [I]t is essentially illogical, at the sentencing phase, to say that the prosecutor cannot encourage the jury to impose a sentence that speaks to deterrence, as well as punishes the specific crime before it.

*Cantrell v. Commonwealth*, 288 S.W.3d 291, 299 (Ky. 2009). Thus, the prosecutor did not engage in misconduct simply by referencing the deterrent function of sentences in the closing argument.

That said, we have also noted nonetheless that

> [a]ny effort by the prosecutor in his closing argument to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited. Prosecutors may not argue that a lighter sentence will 'send a message' to the community which will hold the jurors accountable or in a bad light.

*Id.* Here, however, the sole statement by the prosecutor that referred to the community in any way was the reference to the community's reaction upon seeing video evidence introduced at trial. That mere statement alone in no way suggested any shame or community pressure on the jurors to reach any particular verdict. Rather, it merely referred to the nature of the video and that the community, like the jurors, were likely to be shocked by it. Such a comment does not rise to the level of an improper invocation of shame or community pressure on the jury panel. Thus, because the prosecutor's statement consisted largely of permissible references to the punitive and deterrent effect of a criminal sentence, and did not improperly shame or pressure the jurors, it was not prosecutorial misconduct and does not constitute error.

23

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Kenton Circuit Court.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General

24